## A92A2282. BUTLER v. McCLESKEY.
### (430 SE2d 631)

BIRDSONG, Presiding Judge.

Allen Butler appeals from a defendant's verdict in his suit for injuries received when Butler's motorcycle hit a tree which he alleges burned and fell across the highway because of Samuel McCleskey's negligent burning of a field. The trial court granted a directed verdict on the issue of negligence per se in McCleskey's failure to notify forestry agents of his intent to burn land as required by OCGA § 12-6-90. After two forest rangers testified, the trial court concluded there was no evidence that McCleskey's failure to notify the forestry agents had a causal relation to Butler's injuries, as the rangers would have told McCleskey to go ahead and burn the field and would have done nothing which would have prevented Butler's injuries. The trial court refused to give a negligence per se charge as to McCleskey's failure to abide by § 12-6-90 and refused to allow Butler to argue the matter to the jury.

McCleskey burned a small field adjoining County Line Road in Houston County, Georgia, on Saturday, June 11, 1988. He did not notify forestry agents of his intent to burn the field. Before McCleskey torched the field, a farm hand harrowed a firebreak around the field and between the field and some trees adjoining the highway. After he set the fire, McCleskey left to set a fire in another field and check some cotton for insects. He testified: "I went back down to the highway and went in and looked at the first field that I burned; it was out, and so all the way around, everything was all right, and I decided . . . there was nothing else to do. Everything was out, there was no danger, and I left [and never returned]." As to how he checked this field to be sure the fire was out before he left it, he said, "I'm not sure [whether I got out of my pickup truck or inspected the field while seated in my truck]. I pulled in this road . . . far enough to see. . . . I might have gotten out [of the truck] or I might not, but there was no fire." On further cross-examination, he testified that he stopped at one certain place on a field road from which "you can see all of this wooded area on the north and you can see all of this field . . . probably right in there somewhere you can see it all." He never testified

that he went all around the field to be sure that the fire had gone out and to ensure that it had not crawled across the firebreak. He reckoned that he spent only about an hour burning two fields and checking cotton for insects in another field before he returned home.

Appellant lived less than a mile from this field on County Line Road. He reported to the county sheriff's office on Saturday or Sunday that there was smoke over the highway in this area and was told that unless there was a raging fire nothing would be done. He testified there was smoke along the highway every day following the Saturday the field was burned, but each day the smoke lessened. Butler worked as an airplane mechanic at the Macon Airport on the late shift; at about 2:30 a.m. on the following Wednesday morning, June 15, he was returning home from work. He was driving his motorcycle at about 55 mph until he came "to the end of the last field before . . . the patch of woods [where] I knew there was smoke. I dimmed my headlight because you couldn't see anything the days before with a high beam, so I dimmed my headlight and let off the gas, and just coasted into the smoke. . . . There's shadows there, there's been shadows there every night . . . reflecting off of the smoke or through it and I eased on through the smoke, saw a shadow, what I thought was a shadow and it turned out to be a tree. By the time I realized it was a tree . . . it was too late to stop." Butler testified that on Saturday night after the fire had been set, "you could not see [through the smoke at all] and the next night [Sunday], there was not as much smoke. You know, the headlight glares off the smoke, and you can't see very good. I had to go through there real slow. The next night [Monday], there was less smoke, and then the last night [Tuesday], there was a little bit of smoke, but you could see the light from the church down the street through it. If there had been a car there, you could have seen it. . . . Coming up towards that area, you know, I knew there was smoke there. I knew there was going to be smoke. I also knew the moon comes up behind that group of trees. There's always shadows out there all the time at night when the moon is up, and I just saw what I thought was a shadow until I got too close to it . . . [and] there was no way that I could stop." When he saw the tree, he veered to the right to get off the road and tried to jump off the motorcycle, but he and his vehicle collided with a branch of the tree which was in the ditch. The ditch was still smoking all around it and he tried to get out of the ditch but he could not move. He felt something by his left shoulder and discovered it was his tennis shoe on his left foot; he threw that leg down into the ditch but could not move it; he felt back behind him and found his other leg in a similar position and picked it up and threw it down. Both his legs were broken between the hip and knee. Finally he crawled under the tree and scooted up onto the road. There was more smoke on the east side of the tree than on the west

side of the tree; he wanted to get to the west side of the tree so someone coming from the west would see him before they got into the smoke.

A sheriff's corporal on patrol arrived. He had just gotten a cup of coffee and was driving about 35 mph because he did not want to spill the coffee; otherwise, he would have been driving about 55 mph. His window was rolled down and he heard someone yell for help, so he stopped. He did not testify that smoke obscured his vision or caused him to slow down. Butler's wife, who was concerned because he was late from work and had driven out to look for him, arrived at the same time as the officer. She sat propping Butler up until two ambulances arrived. Paramedics worked on Butler about 45 minutes until they placed him in an ambulance. There was no mention of the presence of any smoke on the road affecting any of these persons during all this time. *Held*:

1. The trial court erred in directing a verdict for McCleskey on the issue of his failure to notify forestry agents of his intent to burn land as required by OCGA § 12-6-90; erred in refusing to charge appellant's requested charge of negligence per se based on this statute; and erred in refusing to let appellant argue the matter to the jury.

A directed verdict is proper only where there is "no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall *demand* a particular verdict." (Emphasis supplied.) OCGA § 9-11-50 (a). McCleskey's failure to notify forestry agents of his intent to burn a field was negligence per se. The evidence, with all reasonable deductions, does not *demand* a finding that this failure had no relation to Butler's injuries. In determining whether to grant a directed verdict, the trial court must construe the evidence most favorably to the party opposing the motion (*McCarty v. Nat. Life &c. Ins. Co.*, 107 Ga. App. 178, 184 (129 SE2d 408)) and so do we on review of a grant of directed verdict.

The record contains considerable evidence which, construed most favorably to Butler, may prove that McCleskey's negligence in failing to notify the foresters of his intent to burn this field next to a highway was a proximate cause of Butler's injuries. According to the rangers' testimony, the purpose of § 12-6-90 is to enable the forestry service to supervise such fires for the safety of the public, particularly of people who pass on a nearby highway or who have trees or houses nearby. When they are properly notified of a fire, the rangers pay "pretty much attention" to the procedure. They first approve whether weather conditions will allow the fire. They also instruct or advise the owner that an adequate firebreak must be built. An adequate firebreak is from six to thirty feet in width; a firebreak between the fire and trees, buildings or highways should be thirty feet in width. If the owner is not able to build a proper firebreak the rangers will do it for

him, and often they return to the site to be sure the fire has gone out.

The sheriff's officer went back to the site the next day and walked around the copse from which the burned tree had fallen. The firebreak he found between the trees and the field was only about 18 inches wide. He found a burned trail where the fire had crept into the trees from the field across the narrow 18-inch firebreak. One of the rangers examined photos of the area and testified that he did not recognize anything which looked like a firebreak.

Both rangers and another farmer testified that one burning a field must go all around the field when the fire had died to be certain that no fire has crawled across a firebreak. Merely stopping in one place and looking at the field, as McCleskey testified he did, or stopping in two or three places, is not sufficient action to see if the fire is out because a flame in grain stubble may be only two or three inches high and may not produce enough smoke to see from a distance.

A fire set next to a highway or buildings is of particular concern to forest rangers. One ranger testified that when they are notified of a fire which is to burn next to a highway, they automatically call the state patrol or Department of Transportation; the reasonable inference is that DOT and the state patrol do something with such information, and the reasonable inference is that they would have checked the site after the burn. Often the rangers will go back to a site to be certain a burn has been extinguished. A farmer witness testified it would be safe procedure to return to the field later to be sure the fire was extinguished. The evidence indicated that usually a small field will burn out in one day or possibly into the night. If McCleskey had notified forestry agents of his intent to burn a field next to a highway and trees, the foresters would have been aware of this burning; construing all the evidence in Butler's favor on McCleskey's motion for directed verdict, a reasonable inference may be made that the foresters and DOT or state patrol reasonably would have checked the site. They would thus have been alerted to the continued emanation of smoke from the copse some five days after the fire.

This evidence and all reasonable deductions and inferences therefrom construed in Butler's favor show that McCleskey was negligent per se in not notifying the forest rangers of his intent to set this fire, and that if he had done so, the rangers would have paid particular attention to this fire adjoining the highway; they would have "automatically" called the state patrol or DOT, and one of these agencies would have discovered that McCleskey did not build a proper firebreak and that the fire had crawled across the 18-inch firebreak into the trees, and they would have discovered a continued emanation of smoke from the trees. Accordingly, the evidence does not *demand* a finding in McCleskey's favor as to his failure to abide by the law and notify the forestry department of his intent to burn this field, and the

trial court erred in refusing to charge the jury on his negligence per se, and erred in refusing to allow appellant to argue these points to the jury.

2. The trial court did not err in refusing to charge appellant's requested charge that a person has a right to assume the road ahead of him is clear; this contravenes a person's duty of ordinary care for his own safety. The trial court adequately charged the jury as to the duty of one who places an obstruction ("hazard") on the road, but the trial court's refusal to charge on "sudden emergency," while charging as to Butler's negligence per se in driving too fast for conditions, was error. The errors which kept the jury from examining fully McCleskey's negligence per se as a proximate cause of Butler's injuries, and the refusal to charge on sudden emergency tended to mislead and confuse the jury in its evaluation of all the evidence.

The jury evidently concluded that Butler was traveling too fast for conditions and cruised into a smoke-filled area of which he had full knowledge; it reached this conclusion upon the removal from its consideration of McCleskey's negligence per se. The jury was permitted to conclude that McCleskey's failure to notify foresters of the fire (which was undisputedly negligence per se) had no connection to the fallen tree. Had the proper charges been given, the jury might reasonably have concluded that this tree was set afire because of the inadequate 18-inch firebreak, for the officer found the fire trail where the fire had crept across that plowed area into the woods. If appellant had been allowed to argue McCleskey's undisputed negligence per se without the overweighing burden of charges on Butler's possible negligence, the jury's view of the evidence might have been quite different. Obviously this tree burned inwardly for several days and this was the source of the smoke; but the smoke had diminished each passing day and still the tree had not fallen. Appellant knew of the smoke, but he also knew that it diminished each day; he had traveled this road every day and he did not have knowledge that a tree had fallen across the road. When the sheriff's officer drove into the area his sight was not so obscured by smoke that he had to slow down, and although there was smoke in the ditch, appellant crawled onto the road with two broken femurs to a place next to the tree where there obviously was little or no smoke. Most telling, there is no suggestion in the evidence that while the officer and Mrs. Butler awaited the ambulance and while paramedics worked on appellant, there was any smoke that caused any person any discomfort while they were all in that very spot where the tree fell across the road. Under proper rulings and charges, a reasonable inference might be made that there was in fact not much smoke on the road that night and Butler's negligence per se (if any) of driving too fast for conditions did not outweigh McCleskey's proven negligence per se. It might be inferred that Butler acted dili-

gently by notifying the sheriff of the smoke, but, being forced to drive through it and based on his previous experience driving through it, on this night he properly anticipated that there would be some smoke, but less smoke; with his headlights full on as he approached the far edge of the field, he did not see so much smoke ahead as to warrant slowing down any more than he did, but when he saw "a little bit of smoke" in the shadows which always lay under these trees at night, he dimmed his headlights. It might even be concluded that the reason he did not see the fallen tree in the shadows was because he reasonably dimmed his headlights when he perceived "a little bit" of smoke, and not because he was driving too fast for conditions; that is, the jury might conclude that since the smoke was evidently slight, Butler would have seen the tree in time to stop if he had not been forced to dim his headlights by his previous difficulties in seeing through their glare on smoke. These are matters for the jury, but under proper rulings and charges the jury may well have concluded that Butler was less negligent than McCleskey, or not negligent at all.

3. The trial court did not err in charging the jury that if it found Butler was driving too fast for conditions (OCGA § 40-6-180) it might find him negligent, but as noted above, the giving of this charge while refusing to charge the jury as to sudden emergency and particularly as to McCleskey's undisputed negligence per se in violating § 12-6-90, coupled with appellant's inability to argue this element of causation to the jury, unduly slanted the case against appellant.

Accordingly, appellant is entitled to a new trial not inconsistent herewith.

*Judgment reversed. Beasley, J., concurs. Andrews, J., concurs in judgment only.*

DECIDED MARCH 16, 1993 —
RECONSIDERATION DENIED APRIL 1, 1993 

*Williams, Sammons & Sammons, George L. Williams, Jr., Walter G. Sammons, Jr.*, for appellant.
*Hulbert, Daniel & Lawson, Tom W. Daniel, Robert T. Tuggle III*, for appellee.