### A10A1032. HEARD v. CITY OF VILLA RICA et al.
(701 SE2d 915)

ADAMS, Judge.

Shonvorreo Heard, by his next friend Sheila Heard, brought an action for negligence against the City of Villa Rica[1] (the City) and Bryant Cash, a volunteer track and field coach for the City of Villa Rica Parks and Recreation Department, seeking damages for injuries Shonvorreo suffered during a training session conducted by Cash. Defendants answered, asserting among other things that Cash was acting as an unpaid volunteer and thus entitled to immunity pursuant to OCGA § 51-1-41 and that the claims against the City were barred by governmental immunity. Defendants subsequently moved for summary judgment. Heard responded, acknowledging that under OCGA § 51-1-41, volunteer coaches are generally immune from liability, but arguing that Cash's conduct here fell within subsection (c), which provides an exception to immunity when injury or damage is caused "by actions or inactions which are intentional, willful, wanton, reckless, malicious, or grossly negligent." The trial court granted summary judgment to defendants finding that Cash was immune from suit under OCGA § 51-1-41 (a) and that the record did not support a finding that Cash was grossly negligent so as to invoke the exception to immunity found in subsection (c). Further, the trial court found, as to the City, that there was no evidence of a master-servant relationship and that the City could not be found liable under a theory of respondeat superior. The trial court also found that there was no evidence to show that Cash was negligently selected, retained or supervised. Heard now appeals from that order.

1. Heard first contends that Cash was not entitled to immunity under OCGA § 51-1-41, which provides in pertinent part as follows:

> (a) Sports officials who officiate amateur athletic contests at any level of competition in this state shall not be liable to any person or entity in any civil action for injuries or damages claimed to have arisen by virtue of actions or inactions related in any manner to officiating duties within

---

[1] Although suit was brought against the City of Villa Rica Parks and Recreation Department, it is undisputed that the real defendant here is the City of Villa Rica.

the confines of the athletic facility at which the athletic contest is played. . . .

However, subsection (c) further provides:

Nothing in this Code section shall be deemed to grant the protection set forth in subsection (a) of this Code section to sports officials who cause injury or damage to a person or entity by actions or inactions which are intentional, willful, wanton, reckless, malicious, or grossly negligent.

As is pertinent here, the mostly undisputed facts show that at the time Shonvorreo[2] was injured, Cash was teaching Shonvorreo and other children the proper way to run down the runway and then perform a long jump into a sand pit. The specific instruction on that day was designed to teach the children how to stand up straight, use good posture, and drive their knees far up into the air. Cash testified that he critiqued everyone after an initial try, and then in keeping with how he had taught in previous years,[3] he placed an object at the mouth of the sandpit for them to jump over. Cash testified that the purpose of having them jump over the object "was to get them to subconsciously stand up straight and jump as high as they possibly can." Although Cash testified he had used different objects for this in the past, during this session he was using a makeshift plastic hurdle, which apparently was in the shape of a sawhorse.[4] Cash, testified that the cross bar of the hurdle was set at the lowest position, which was "below his knees." Cash testified that Shonvorreo was one of the first to volunteer to jump over the hurdle and that he had attempted one jump over the hurdle but had broken that jump off before it was completed. He testified he knew Shonvorreo had a difficult time running "straight up" because he normally ran leaning "really far forward," and that he told Shonvorreo to make a second attempt and he would instruct him when to stand up. It was during this second attempt that Shonvorreo was injured.

As noted above, in response to defendants' motion for summary judgment, Heard argued that Cash's conduct fell within subsection (c), specifically that he was grossly negligent by using a hard plastic object as a hurdle, especially in light of the fact he knew that Shonvorreo had trouble running straight up and had aborted his

---

[2] Shonvorreo was 13 years old at the time he was injured. The Villa Rica Track and Field Program was for children ages six through fourteen.

[3] The injury here occurred in 2006, and Cash had been a volunteer coach for the City of Villa Rica since 2000.

[4] Although Cash testified during his deposition that he did not know what a sawhorse looked like, he was asked to draw a picture of what he used.

first try. Now, for the first time on appeal, she also argues that Cash does not have immunity under OCGA § 51-1-41 because Cash was not "officiating" an "athletic contest at any level of competition" as those terms are used in the statute. Although not argued below, Heard contends she should nevertheless be allowed to make this argument on appeal, citing cases involving situations where we have allowed arguments to be asserted for the first time on appeal. However, we find none of those cases to be applicable here.[5] Moreover, in this case, there is more than just the failure to raise the issue below; Heard affirmatively acknowledged the applicability of the immunity granted by OCGA § 51-1-41 to volunteer coaches, before going on to argue that the present case fell within the exception codified in subsection (c) for injuries resulting from gross negligence.[6] Thus, we will not address the issue of whether Cash was "officiating" an "athletic contest at any level of competition" as those terms are used in the statute. As we have said on numerous occasions,

> [o]ur appellate courts are courts for the correction of errors of law committed in the trial court. Routinely, this Court refuses to review issues not raised in the trial court. To consider the case on a completely different basis from that presented below would be contrary to the line of cases holding, "He must stand or fall upon the position taken in the trial court." Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court. (Punctuation and footnotes omitted.) *Pfeiffer* [*v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (573 SE2d 389) (2002)]. Although under the "right for any reason" rule this court will affirm the correct ruling of a trial court on grounds not addressed below, we do not apply a "wrong for any reason"

---

[5] For example, in *McCombs v. Synthes*, 277 Ga. 252 (587 SE2d 594) (2003), we found that although the issue asserted on appeal had not been specifically asserted below, a finding on that issue was implicit in the trial court's order. However, in the present case, Heard acknowledges in her brief on appeal that counsel for the parties and the trial court "succumbed to the same blind spot" of, in essence, assuming the applicability of the section to volunteer coaches "generally" without looking further. And in *Falanga v. Kirschner & Venker, P.C.*, 286 Ga. App. 92 (648 SE2d 690) (2007), the issue raised on appeal concerned the factual basis to support an affirmative defense, whereas in this case the argument raised implicates issues of first impression involving statutory construction. And the last case Heard cites is clearly not instructive here since it involved the reversal of a jury award based on an appellate decision that had been issued between the time of trial and the subsequent appeal. *Hopkinson v. Hopkinson*, 239 Ga. App. 518, 519 (1) (521 SE2d 453) (1999).

[6] In her brief in response to defendants' motion for summary judgment, Heard stated: "Defendants are correct that under OCGA § 51-1-41 volunteer coaches are immune from liability, generally[,]" before going on to argue the applicability of the exception stated in subsection (c).

rule to reverse incorrect rulings on issues not raised or ruled upon in the trial court. *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002).

(Punctuation omitted.) *Lowery v. Atlanta Heart Assoc., P.C.*, 266 Ga. App. 402, 404-405 (2) (597 SE2d 494) (2004).

Moreover, it would be unfair to now find that Cash failed to prove the applicability of that section given that Heard acknowledged that it was applicable to volunteer coaches generally and appeared to acknowledge that it was applicable to Cash, who undisputedly occupied the position of a volunteer coach.[7] Further, it would be unfair to force Cash to respond to Heard's belated argument and address this issue for the first time "within the narrow time frame of appellate practice rules." *Pfeiffer*, 275 Ga. at 829 (2).

We now turn to Heard's argument that Cash's actions were grossly negligent. "Gross negligence is defined as the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or lack of the diligence that even careless men are accustomed to exercise." (Punctuation and footnote omitted.) *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 707 (2) (618 SE2d 621) (2005). "In other words, gross negligence has been defined as 'equivalent to (the) failure to exercise even a slight degree of care' [cits.] or 'lack of the diligence that even careless men are accustomed to exercise.' [Cit.]" *Pottinger v. Smith*, 293 Ga. App. 626, 628 (667 SE2d 659) (2008). Although in the trial court Heard relied primarily on the affidavit of her expert in which the expert opined that "Cash had failed to exercise even the *slightest degree* of common sense or diligence," the trial court properly discounted that portion of the affidavit. "A mere conclusory expert opinion with respect to the existence of gross negligence does not create a jury issue; rather, there must be facts sufficient for a jury to find gross negligence." Id. at 629, n. 3. Thus, to the extent Heard relied on the opinion of her expert to establish gross negligence, the trial court correctly held that Heard had not met her burden of showing that Cash was not immune under the statute.[8]

In addition to the expert's affidavit, Heard also points to the following facts to show Cash was grossly negligent: Cash placed a

---

[7] "Sports official" is defined in OCGA § 51-1-41 (b) (2) as "Those individuals who render service without compensation as a manager, coach, instructor, or assistant manager, coach, or instructor in any system of supervised recreation established pursuant to Chapter 64 of Title 36." Heard does not challenge that Cash was a sports official as defined in the statute.

[8] As the party seeking to establish a wavier of the statutory immunity provided by OCGA § 51-1-41, the burden was on Heard to establish the waiver. *Doss v. City of Savannah*, 290 Ga. App. 670, 675 (3) (660 SE2d 457) (2008).

relatively hard, relatively immobile sawhorse-type hurdle for the trainees to jump over, while running at high speeds, although they may have lacked prior experience in jumping hurdles. Further, as to Shonvorreo in particular, the evidence showed that he failed to complete his first run at the hurdle and that he had difficulty running "straight up."

We do not believe, however, that these facts were sufficient to establish Cash acted with gross negligence and thus without immunity under the statute. Cash testified that he had first learned this training technique many years ago from another coach, and that he had used this technique for several years. Moreover, Heard's own expert had written a book that included a section on this training technique, although he went on to add a caution to "never use real hurdles, benches, or something that might cause athletes to trip." Cash testified that through the years he had used a number of objects for this exercise, including getting on all fours and using his own body for this purpose. In this particular case, he testified that he set the makeshift hurdle at its lowest placement, which he estimated was about level to his knee, and Cash testified that he always tried to avoid injuries in his training methods. And the evidence showed that Cash did not allow Shonvorreo to attempt the second jump without instruction; Cash told him to give it another try and he would tell him when he needed to stand up straight.

> "(Q)uestions of negligence and diligence, even of gross negligence and slight diligence, usually are matters to be determined by the jury(, but) in plain and indisputable cases . . . the court may solve the question as a matter of law." (Punctuation omitted.) *Lewis v. Wilson*, 111 Ga. App. 666, 670 (142 SE2d 852) (1965). On the present record, this is such a plain and indisputable case. Even assuming there was evidence sufficient to create a jury issue as to whether [Cash's] actions were negligent, there is no evidence . . . by which a jury could reasonably conclude that [Cash] failed to exercise even slight care and was therefore grossly negligent.

*Pottinger*, 293 Ga. App. at 629.

2. Having reviewed the record, we also agree with the trial court that the City was entitled to summary judgment on Heard's claim that the City was liable under a theory of respondeat superior. See, e.g., *Feggans v. Kroger Co.*, 223 Ga. App. 47 (1) (476 SE2d 822) (1996); *Loudermilk Enterprises v. Hurtig*, 214 Ga. App. 746 (449

SE2d 141) (1994) (no precedential value). The order granting summary judgment to defendants is accordingly affirmed.[9]

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 1, 2010.

*Donald W. Singleton, Charles M. Cork III*, for appellant.
*James R. Westbury, Jr., Matthew H. Bennett*, for appellees.

---

[9] Heard does not challenge the grant of summary judgment on the claims for negligent supervision, hiring and retention.