## A10A1914. MORGAN v. HORTON et al.
### (707 SE2d 144)

ELLINGTON, Chief Judge.

E. Hilton Morgan appeals from the denial of his motion for summary judgment on this wrongful death claim,[1] which arose when smoke from a prescribed burn on Morgan's property combined with fog and significantly reduced the visibility on a nearby highway, allegedly causing or contributing to an accident which resulted in the death of a motorist, Ronnie Horton, Sr. Because we find that the undisputed evidence demonstrates as a matter of law that Morgan was entitled to the protections from liability provided by OCGA § 12-6-148, we reverse the trial court's order and remand this case with direction to enter judgment in favor of Morgan.

This case presents an issue of first impression for this Court, as follows:

If the undisputed evidence shows that a landowner obtained a permit from the Forestry Commission to conduct a prescribed burn[2] on his property, followed the directions of the ranger in charge of supervising the burn, arranged for the ranger to be onsite to monitor the burn, and, according to the ranger, properly conducted the prescribed burn, is the landowner entitled as a matter of law to the protections of OCGA § 12-6-148,[3] which provides that a landowner who

---

[1] This Court granted Morgan's application for interlocutory appeal.

[2] OCGA § 12-6-147 (2) defines "[p]rescribed burning" as "the controlled application of fire to existing vegetative fuels under specified environmental conditions and following appropriate precautionary measures, which causes the fire to be confined to a predetermined area and accomplishes one or more planned land management objectives or to mitigate catastrophic wildfires."

[3] OCGA § 12-6-148 provides as follows:

(a) Prescribed burning conducted under the requirements of this part shall:

(1) Be accomplished only when an individual with previous prescribed burning experience or training is in charge of the burn and is present on site until the fire is adequately confined to reasonably prevent escape of the fire from the area intended to be burned;

(2) Be considered in the public interest and shall not create a public or private nuisance;

(3) Be considered a property right of the landowner; and

(4) Be conducted in accordance with a permit issued under Part 3 of this article.

(b) No property owner or owner's agent conducting an authorized prescribed burn under this part shall be liable for damages or injury caused by fire or resulting smoke unless it is proven that there was gross negligence in starting, controlling, or completing the burn.

See OCGA § 12-6-90 (permit requirements for burning vegetation on property); see also OCGA § 12-6-91 (Unless otherwise prohibited, "the owners of any forest land may accomplish controlled burning over their own land when a permit therefor is obtained pursuant to the requirements of Code Section 12-6-90 and the fire is not allowed to spread onto or over the land of another or others.").

conducts a prescribed burn in compliance with the statute cannot be held liable for damages or injuries caused by fire or smoke, or for creating a nuisance, unless it is proven that he was grossly negligent in starting, controlling or completing the burn?

For the following reasons, we answer in the affirmative.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." (Citations and punctuation omitted.) *White v. Ga. Power Co.*, 265 Ga. App. 664, 664-665 (595 SE2d 353) (2004). So viewed, the evidence shows the following undisputed facts.

On December 4, 2001, Morgan, a Brantley County landowner, conducted a prescribed burn of a tract of his land, which is located near a highway. Because Morgan had no experience in conducting a prescribed burn, he contacted the local office of the forestry service in November 2001 to ask for help with the project, and he was assisted by the office's chief ranger, who had over 30 years of experience with the forestry service and was certified to conduct and supervise prescribed burns. The ranger divided Morgan's land into four small tracts of about fifteen acres each (to be burned separately to reduce the smoke impact), showed forestry service employees where to plow firebreaks, and monitored the weather reports, looking for a day with suitable conditions for a prescribed burn.

Early on the morning of December 4, the ranger decided that he and Morgan should conduct the prescribed burn that day because there was a "good east wind" and a good smoke dispersion index, they would have favorable weather for the next two days, and the weather conditions were the best the area had had for conducting a prescribed burn since Morgan's inquiry in November. After telling Morgan that he "should be able to burn without a problem" due to the good weather forecast, the ranger called the forestry service office and obtained a prescribed burning permit, and, at approximately 10:30 a.m., the ranger and Morgan started burning one of the tracts. The fire was started properly,[4] and the men monitored the burn throughout the day. According to the ranger, the burn was complete by 4:25 p.m., and, by the end of the day, the residual smoke was light and blowing away from the highway.

Both men repeatedly checked on the property on December 5

---

[4] There is some confusion about who actually started the fire, but that fact is not significant to the issues on appeal, because the undisputed evidence shows that the fire was started properly and that the ranger was present at that time.

and observed that the property continued to smolder and that some small patches of brush may have continued to burn, but that the light residual smoke was still dispersing and blowing away from the highway. Even so, when the ranger received that day's weather forecast and learned that the weather conditions were going to change overnight and that smoke might blow toward the highway, combine with fog, and reduce drivers' visibility, he contacted the Georgia State Patrol to request that warning signs be erected along the highway. An officer with the State Patrol told the ranger that it would monitor the situation and direct the state Department of Transportation ("DOT") to put out signs if necessary. However, no warning signs were erected.

Then, on the night of December 5, the weather conditions changed, the wind died down, and the residual smoke from the burn began to "hover" in the area. Between 6:00 and 7:15 a.m. on December 6, the smoke combined with heavy fog and severely limited visibility on the highway. During that time, the driver of a tractor-trailer was driving northbound on the highway and, due to the limited visibility, he stopped his tractor-trailer in the northbound lane of the highway. Shortly thereafter, a vehicle driven by Ronnie Horton, Sr., collided with the tractor-trailer, and Horton was killed.

The plaintiffs sued Morgan and the tractor-trailer driver,[5] alleging that their negligence caused Horton's death. The plaintiffs also claimed that Morgan created a hazardous nuisance. Morgan moved for summary judgment on the basis that no issue of material fact remains for jury determination and that he was entitled to judgment as a matter of law.

Following a hearing,[6] the trial court denied Morgan's motion for summary judgment, but issued a certificate of immediate review. Morgan filed his application for appeal to this Court pursuant to OCGA § 5-6-34 (b). This Court granted the application, and this appeal follows.

In several related enumerations of error, Morgan contends that he was entitled to the protections from liability provided by OCGA § 12-6-148, and, as a result, the trial court erred in denying his motion for summary judgment. Specifically, Morgan argues that the undisputed evidence shows that he conducted an authorized prescribed burn in compliance with OCGA § 12-6-148 (a), and that he was not grossly negligent in starting, controlling, or completing the burn. Thus, he contends he was entitled to summary judgment, because

---

[5] The plaintiffs subsequently dismissed their suit against the tractor-trailer driver.

[6] No transcript of the hearing on the motion for summary judgment was filed in the lower court.

OCGA § 12-6-148 (b) prohibits a person who conducts an authorized burn in compliance with subsection (a) from being held "liable for damages or injury caused by fire or resulting smoke unless it is proven that there was gross negligence in starting, controlling, or completing the burn."

As an initial matter, we must address whether the trial court properly concluded that a jury issue exists as to whether Morgan is entitled to the protections of OCGA § 12-6-148. Then, if we determine that the undisputed evidence shows that Morgan *is covered* by the statute, we will have to determine whether a jury issue exists as to whether Morgan was *grossly negligent* in starting, controlling or completing the burn. In the alternative, if we determine that the undisputed evidence shows that Morgan *is not covered* by the statute, then the questions arise of whether there is any evidence to show that Morgan was *simply negligent* in starting, controlling or completing the burn, or whether there is evidence that Morgan created a nuisance.

1. The plaintiffs claim that Morgan is not protected by OCGA § 12-6-148 because he failed to comply with subsection (a) (1), which requires that "an individual with previous prescribed burning experience or training is in charge of the burn and is present on site until the fire is adequately confined to reasonably prevent escape of the fire from the area intended to be burned."[7]

(a) The plaintiffs contend that Morgan was "in charge" of the burn and, because he had no previous experience with prescribed burns, he failed to comply with the statutory requirement. This contention, however, is based solely on the ranger's testimony that the property belonged to Morgan and the permit was in Morgan's name, so the burn was Morgan's responsibility. But the ranger further explained that the forestry service *never* takes actual responsibility — and, thus, is never liable — for prescribed burns. Notwithstanding this statement, though, the evidence shows that the ranger made the critical decisions regarding the timing and method of the burn and that, instead of substituting his own opinions (which may have increased the damage caused by the fire and/or its smoke or stripped Morgan of the protections of the statute), Morgan followed the ranger's directions. In fact, Morgan testified that it was *because*

---

[7] Because Morgan, as the appellant in this case, frames his alleged errors in a manner that challenges the plaintiffs' arguments that were presented in the trial court in opposition to his motion for summary judgment, we will address those arguments directly, as if the plaintiffs were the appellants herein, as a matter of clarity and efficiency. We note that, regardless which party is the appellant, we must still view the evidence in the light most favorable to the plaintiffs, as nonmovants in the motion for summary judgment in the trial court. See *White v. Ga. Power Co.*, 265 Ga. App. at 664-665.

he had no experience with conducting prescribed burns that he completely relied on the ranger's expertise and followed his directions.[8]

Because the evidence shows that the ranger had extensive prescribed burning training and experience, evaluated Morgan's circumstances and made the critical decisions about the timing, permitting and location of the burn and the methods to be used, and directed and supervised forestry employees and Morgan accordingly, we cannot say that Morgan failed to ensure that "an individual with previous prescribed burning experience or training is in charge of the burn" for the purposes of OCGA § 12-6-148 (a) (1).

(b) The plaintiffs also argue that the ranger was not "continually present" during the burn, because the evidence showed that he briefly left the site a few times on December 4. The statute, however, does not expressly require the individual who is in charge of the burn to be "continually present" at the site or prohibit him from leaving the site for brief periods of time while the burn is under control, and the plaintiffs have cited to no authority to support such a construction.

Moreover, even if the ranger left the burn site for short periods of time on December 4, the undisputed evidence shows that, throughout that day, the fire *was* "adequately confined to reasonably prevent escape of the fire from the area intended to be burned," as required by the statute. Indeed, the fire never left the tract or jumped the firebreaks. Accordingly, the plaintiffs' argument presents no basis for finding that Morgan was not entitled to the protections of OCGA § 12-6-148.

2. The plaintiffs claim that Morgan was not protected by OCGA § 12-6-148 because he failed to comply with subsection (a) (4), which requires that the prescribed burn be conducted in accordance with a permit issued pursuant to OCGA § 12-6-90.[9] Specifically, they argue that they presented affidavits from eyewitnesses[10] who saw flames on Morgan's property on December 5 and that Morgan did not have a

---

[8] As Morgan argues in his appellate brief,

If landowners are automatically deemed to be legally "in charge" of [prescribed] burns, no landowner without experience and training in burning could ever have a prescribed burn conducted on his property. This interpretation [of the statute] would make OCGA § 12-6-148 (a) (1) have a nonsensical result, and certainly would discourage — if not eliminate entirely — prescribed burns by citizens of this State, which would go against the stated legislative policy encouraging prescribed burns.

[9] OCGA § 12-6-90 (a) provides that "any person . . . lawfully entitled to burn any woods, lands, marshes, or any other flammable vegetation . . . shall prior to such burning obtain a permit therefor from the forest ranger of the county wherein such burning is to be made[.]"

[10] The plaintiffs' contention that Morgan was actively burning the land on December 5, 2001, is based on 2009 affidavits of alleged eyewitnesses who claim they saw flames on Morgan's property that day.

permit to conduct an active burn on his property for that date.

The plaintiffs, however, have cited no authority for a construction of OCGA § 12-6-90 (a) that requires a landowner to get a new permit for the day *after* a prescribed burn just because some intermittent flames flare up that day, especially under the circumstances in this case, when it is undisputed that the fire never left the burn area and that no one was actively setting new fires or otherwise generating the residual fires on December 5.

Further, although the plaintiffs' expert witness stated in an affidavit that, "[a]ccording to the State Forestry Commission Policy and Procedure [Manual], no active flames are permitted outside of the permitted time," the manual upon which he relied for this conclusion is not a part of the record. Accordingly, the expert's assertion regarding the manual's contents is inadmissible hearsay and without probative value. See OCGA § 9-11-56 (e) ("Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."); *Farrar v. Macie*, 297 Ga. App. 192, 194 (2) (676 SE2d 840) (2009).

And, the plaintiffs' reliance on *Butler v. McCleskey*, 208 Ga. App. 341 (430 SE2d 631) (1993), is misplaced because, in that case, the landowner failed to obtain a permit or to notify the forestry service *at all* before conducting a burn which resulted in the plaintiff's injuries. This Court concluded that "[t]his evidence and all reasonable deductions and inferences therefrom construed in [the plaintiff's] favor show that [the landowner] was *negligent per se* in not notifying the forest rangers of his intent to set this fire[.]" (Emphasis supplied.) Id. at 344-345 (1). Such is not the case here.

Finally, it is undisputed that the ranger never told Morgan that the fire had to be completely out by 4:00 p.m. on December 4 because the permit would expire, nor did the ranger tell Morgan that he had to stop the burn or put the fire out on December 4 because of the possibility of smoke combining with fog.

Thus, neither the evidence nor the authority relied upon by the plaintiffs supports a finding that Morgan's failure to obtain a separate permit for the days following December 4 stripped him of the protections provided by OCGA § 12-6-148.

3. Having determined that Morgan was entitled to the statute's protections from liability for simple negligence or creating a nuisance, we must now consider whether the undisputed evidence creates a jury issue as to whether Morgan exhibited "gross negligence in starting, controlling, or completing the burn." OCGA § 12-6-148 (b).

"Gross negligence" is defined as "the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or

lack of the diligence that even careless men are accustomed to exercise."[11] (Punctuation and footnote omitted.) *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 707 (2) (618 SE2d 621) (2005). See also OCGA § 51-1-4 (defining "slight diligence" and "gross negligence"). Generally,

> [w]hen facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people as to whether or not negligence can be inferred, and[,] if so[,] whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury.

(Punctuation and footnote omitted.) *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. at 709 (2). In cases wherein the evidence allegedly supporting the accusations of gross negligence is plain and indisputable, however, the court may resolve the questions of whether the defendant acted with gross negligence as a matter of law. *Heard v. City of Villa Rica*, 306 Ga. App. 291, 295 (1) (701 SE2d 915) (2010).

(a) In support of their argument that jury questions exist as to whether Morgan was grossly negligent in this case, the plaintiffs rely, in part, on their expert witness' affidavit. According to the affidavit, the expert's opinion was that Morgan acted "without exercising the slightest diligence" and "without any concern for public safety." These are conclusory opinions, however, that clearly invade the province of the jury on the question of whether Morgan was grossly negligent. "A mere conclusory expert opinion with respect to the existence of gross negligence does not create a jury issue; rather, there must be facts sufficient for a jury to find gross negligence." (Citation and punctuation omitted.) *Heard v. City of Villa Rica*, 306 Ga. App. at 294 (1). Thus, to the extent the plaintiffs rely on the opinion of their expert to establish Morgan's gross negligence, they have not met their burden. See id. (Although the plaintiff relied primarily on her expert's affidavit, in which the expert opined that the defendant "had failed to exercise even the *slightest degree* of common sense or diligence," when asserting that a jury issue existed regarding the defendant's gross negligence, the trial court properly

---

[11] In contrast, OCGA § 51-1-2 defines "ordinary diligence" and "ordinary negligence" as follows:

> In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. As applied to the preservation of property, the term "ordinary diligence" means that care which every prudent man takes of his own property of a similar nature. The absence of such diligence is termed ordinary negligence.

discounted that portion of the affidavit and looked, instead, to whether there were facts to support such a conclusion.) (footnote omitted; emphasis in original).

Moreover, the expert's criticisms about the location, date and methods used when conducting the burn are aimed directly at decisions made *solely* by the ranger and simply relied upon by Morgan. In other words, the expert suggests that Morgan is not entitled to rely on the advice and directions of the ranger (or the forestry service) and, if he does so, he is negligent. In fact, the expert suggests that Morgan was required to exercise *extraordinary care* by, inter alia: instituting safety procedures above and beyond what the ranger or the forestry service recommended; consulting with other professionals and exhausting all options other than burning; ensuring that he had bulldozers, excavators, and other large equipment available onsite to diminish the smoke, if necessary; and advising local and state authorities that they needed to close the roads on December 6. These contentions, however, conflict with the statute's provision that landowners properly conducting prescribed burns pursuant to a permit will not be liable absent their gross negligence.

Further, in the expert's opinion, Morgan was grossly negligent for conducting the burn *at all* due to the land's proximity to the highway, the city, schools and nursing homes. Thus, according to the expert, Morgan should have ignored the ranger's recommendations and should not have conducted the burn in order to ensure that the public would be protected from *any* possibility that smoke would emanate from his property. This argument clearly undermines the express purposes behind Georgia's Prescribed Burning Act, OCGA § 12-6-145 et seq.[12]

Thus, the plaintiffs' expert witness affidavit does not create a

---

[12] OCGA § 12-6-146 states as follows:

(a) It is declared by the General Assembly that prescribed burning is a resource protection and land management tool which benefits the safety of the public, Georgia's forest resources, the environment, and the economy of the state. The General Assembly finds that:

(1) Prescribed burning reduces naturally occurring vegetative fuels within forested areas. Reduction of such fuels by burning reduces the risk and severity of major wildfire, thereby lessening the threat of fire and the resulting loss of life and property;

(2) Georgia's ever-increasing population situates urban development directly adjacent to fire prone forest lands. The use of prescribed fire to manage fuels in interface areas would substantially reduce the threat of damaging wildfire in urban communities;

(3) Forest land constitutes significant economic, biological, and aesthetic resources of state-wide importance. Prescribed burning on forest land serves to reduce hazardous accumulations of fuels, prepare sites for both natural and artificial forest regeneration, improve wildlife habitat, control insects and disease, and perpetuate fire dependent ecosystems;

jury issue on whether Morgan was grossly negligent in this case. It follows that, in order to determine whether a jury issue exists, we must determine whether the plaintiffs' specific contentions are supported by facts in the record.

(b) The plaintiffs claim that a jury issue exists as to whether Morgan was negligent because he should not have been burning *at all* due to the weather conditions and the forestry service's determination that, on December 4, the only thing that should be burned was "yard trash." However, the undisputed evidence shows that the ranger called the district office and the district ranger specifically approved the permit to burn Morgan's property, notwithstanding the "yard trash" limitation.

(c) The plaintiffs argue that a jury issue exists as to whether Morgan negligently failed to consider alternatives to conducting a prescribed burn on his property. Pretermitting whether there was any evidence that Morgan did not consider such alternatives, the ranger testified that the only real alternative methods to reduce the fuel load/root mat of Morgan's land were shearing or thrashing the vegetation, which cause other problems, such as reducing the topsoil and attracting and providing a habitat for rattlesnakes and other dangerous pests. The ranger testified that, because of these problems, the forestry service no longer recommends those methods. Given such evidence, the jury would not be authorized to find that Morgan was grossly negligent for failing to utilize an alternative to conducting a prescribed burn.

(d) The plaintiffs contend that a jury issue exists as to whether Morgan was negligent because he failed to prevent smoke from his property from entering onto the public roadway and, in fact, created a smoke hazard sufficient to cause a total blackout of the vision of drivers. In a related argument, the plaintiffs argue that a jury issue exists as to whether Morgan was negligent because he failed to have

---

(4) State and federally owned public use lands such as state parks, state and national forests, and wildlife refuges receive resource enhancement through use of prescribed burning;

(5) As Georgia's population continues to grow, pressures from liability issues and smoke nuisance complaints cause prescribed burn practitioners to limit prescribed burn activity, thus reducing the above-mentioned benefits to the state;

(6) Public misunderstanding of the benefit of prescribed burning to the ecological and economic welfare of the state exerts unusual pressures that prevent uninhibited use of this valuable forest resource management tool; and

(7) Fire benefits rare, threatened, and endangered plants, deer, turkey, quail, dove, and other game as well as numerous songbirds and other nongame species by the increased growth and yields of herbs and legumes. It also allows openings for feeding and travel.

(b) It is the purpose of this part to authorize and promote the continued use of prescribed burning for community protection, silvicultural, environmental, and wildlife management purposes.

proper equipment to eliminate the smoke hazard created by the burn or, in the alternative, failed to have the forestry service extinguish the fire completely on December 5.

According to the ranger, however, there is "nothing actually physically that [a landowner] can do" to stop a prescribed burn from smoldering or to prevent the resulting smoke. In fact, when asked if there was anything more that could have been done *in this case* to minimize the smoke emanating from the fire or the smoldering remains, the ranger testified that he did not think so, because they used more precautions than usual, such as "putting in smaller blocks than what typically would be done. . . . [W]e blocked [the property] from four to five blocks instead of one continuous block. In some cases we may have cut it in half, but it was cut into smaller blocks, burned early, and completed early." In the ranger's opinion, this method minimized the amount of smoke generated from the burn.

Further, when asked, "could you tell me what Mr. Morgan could have done to reduce the smoke over his land other than not have burned, period, on December the 5th and the morning of December the 6th?", the ranger responded as follows:

> *I think we followed all the guidelines that he could possibly follow.* You know, we went above and beyond trying to get it right to keep from having a problem. *He contacted me and relied on me to make the decision how to get it set up to burn and when to burn*, and that's exactly what we [did], and we based it on the weather forecast and following the guidelines to get the burn done, *but as far as him being able to do anything other than not burning, there was nothing. I mean, . . . he basically [did] everything that he could.*

(Emphasis supplied.)

The ranger also testified that landowners do not have access to the specialized heavy equipment that would be needed to reduce the smoke that emanated from the smoldering remains of a prescribed burn, because none of the equipment is stored locally — it has to be brought in from other parts of the state. According to the ranger, a "mop up" (using heavy, expensive equipment to eliminate residual smoke from a prescribed burn) is an extraordinary measure that the forestry services use only in emergency circumstances. It is also undisputed that the ranger never told Morgan about the use of heavy equipment to put out the smoldering remains — or gave Morgan the option to use the equipment — until after the accident.

Consequently, the plaintiffs' allegations are not supported by evidence showing that Morgan was grossly negligent in taking extra precautions prior to the burn to prevent the smoldering remains

from releasing smoke or in failing to have specialized equipment at the burn site to address potential smoke-related problems on December 6.

(e) The plaintiffs argue that a jury issue exists as to whether Morgan negligently failed to monitor the burn on December 5 and 6. Specifically, the plaintiffs argue that the ranger gave Morgan instructions to monitor the smoke and fog situation and "to call 911 if the situation became worse so they could have the road closed." In a related argument, the plaintiffs contend that a jury issue exists as to whether Morgan was negligent because he failed to warn the public and others using the highway regarding the hazard created by the smoke coming from his property. These arguments lack merit for several reasons.

First, this allegation misstates the evidence, which does not show that the ranger gave Morgan clear directions or a specific instruction regarding if and when to call 911, but simply shows that the two men acknowledged that, as Morgan watched over his property that evening, he would call 911 if he observed any problems. Second, Morgan testified that he observed no problems on the evening of December 5 and, when he drove through the area two or three times at around 6:00 a.m. on December 6, there was some reduced visibility on the highway, but he could still see about 100 yards ahead with his headlights on, so he did not think he needed to call the ranger or 911. Third, the undisputed evidence shows that *only* the Georgia State Patrol is authorized to contact the state DOT and request that warning signs for motorists be erected. Fourth, it is also undisputed that, before the morning of December 6, the ranger specifically told Morgan that he had *already* notified the State Patrol about the need for warning signs along the highway. In fact, it is undisputed that an officer with the State Patrol told the ranger that it would monitor the situation and would contact the DOT about erecting warning signs.

Accordingly, given these facts, the plaintiffs have not shown that Morgan's failure to call 911 constituted gross negligence.

(f) Finally, the plaintiffs contend that jury issues exist as to whether Morgan was negligent because he allowed an excessive amount of property adjacent to a public roadway to be burned, because he failed to ensure that the burning of his property adjacent to the public roadway was extinguished at the time that his permit had expired. and because he failed to properly obtain a permit to allow continued smoldering and burning of his property on December 6. The first argument, however, attacks decisions made solely by the ranger, not Morgan, and all three arguments lack merit for the reasons explained in Divisions 1, 2 and 3 (a), supra.

Accordingly, we find that the evidence in the record before us is

plain and indisputable and leads to only one reasonable conclusion. Even assuming there is evidence sufficient to create a jury issue as to whether Morgan was negligent in some way while starting, controlling or completing the prescribed burn, there is *no* evidence from which a jury could reasonably conclude that Morgan failed to exercise slight diligence and was, therefore, grossly negligent. See generally *Heard v. City of Villa Rica*, 306 Ga. App. at 295 (1). Consequently, the trial court erred in failing to grant his motion for summary judgment.

*Judgment reversed and case remanded with direction. Andrews and Doyle, JJ., concur.*

DECIDED MARCH 4, 2011 — 

*Forbes, Foster & Pool, Morton G. Forbes, Blacknall & Little, Willis H. Blacknall III, Mary K. Durant*, for appellant.

*Cook, Hall & Lampros, Peter A. Lampros, Gary F. Easom*, for appellees.