## A11A1745. WOLFE v. CARTER.
### (726 SE2d 122)

ADAMS, Judge.

James Wolfe appeals from the trial court's grant of summary judgment to Steve Carter in Wolfe's personal injury lawsuit arising out of a three-car collision in Toombs County on January 13, 2007. For the reasons set forth below, we affirm.

> At the outset, we note that on appeal from a grant of a motion for summary judgment, we review the evidence de novo in the light most favorable to the nonmovant to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law.

(Punctuation omitted.) *Burnside v. GEICO Gen. Ins. Co.,* 309 Ga. App. 897, 898 (714 SE2d 606) (2011). Summary judgment is proper if the record evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Punctuation omitted.) *Benefield v. Tominich,* 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011).

So viewed, the evidence shows that on January 13, 2007, Wolfe was traveling in a pickup truck in the northbound lane of Highway 27 near Odum, Georgia, near the highway's intersection with Aspinall Break Road. Wolfe was following a tractor-trailer driven by Hollis Bryant, whom Wolfe also named as a defendant in the lawsuit. A second tractor-trailer, driven by Bill Rainey[1] was following Wolfe. According to the accident report, the collision occurred when an unidentified driver made a u-turn across the highway. When Bryant slowed unexpectedly in response, Wolfe struck him from behind, and

---

[1] Although Rainey was initially named as a defendant, he apparently was later dismissed from the action.

Rainey, in turn, struck Wolfe, sandwiching his pickup between the two tractor-trailers.

Wolfe, Bryant and Rainey all described the conditions at the time of the collision as smoky and foggy. Wolfe said that the smoke and fog was thick as a wall at the time of the collision, which caused him to reduce his speed from approximately 50 miles per hour to 30 miles per hour. His vision was limited to less than two or three feet in front of the hood of his truck. He was in the smoke for approximately two minutes before the collision occurred. Bryant said that he saw "a lot of fog and smoke" that day. The smoke stretched for approximately one to one-and-one-half miles and caused him to slow to around 20 to 30 miles per hour and turn on his emergency flashers. Bryant said that it smelled like wood burning. Rainey also saw thick smoke and fog for about two miles, making his visibility "very, very poor." He could not see more than one foot past his hood. It smelled like trees burning. Rainey slowed down to around fifteen miles per hour and turned on his "four-ways" (lights).

On his way to respond to the accident report, Georgia State Trooper Rozier said he encountered fog and smoke about two to three miles from Odum. The smoke was coming from the east side of the roadway, and Rozier could smell it. He described the visibility as "minimum, twenty, twenty-five foot, at the most, you could see ahead of you." He believed that the fog and smoke played a factor in the accident.[2] Rozier contacted the Forestry Commission, and learned that only one person, Carter, had conducted a controlled burn in the area, but he did not know the location of the burn. Rozier did not know whether the smoke on the roadway was caused by Carter's controlled burn and conceded that it could have been caused by any fire in the area.

Carter obtained permission from the Georgia Forestry Commission to conduct prescribed burns on January 10, 11 and 12, 2007 on property near the intersection of Georgia Highway 341 (also known as Highway 27) and Aspinall Break Road in Toombs County.[3] Carter conducted three separate controlled burns on consecutive days, burning approximately 120 acres over the three-day period. The fires from the controlled burns on January 10 and 11 had been completely extinguished by January 12. That day, Carter began the prescribed burn between 9:00 a.m. and 10:00 a.m. Carter allowed the fire to

---

[2] In addition to the smoke and fog, Rozier noted on the accident report that Wolfe was following too closely and going too fast for conditions, which he believed also contributed to the accident.

[3] Carter, who holds a bachelor's degree in forest management, has worked in the forestry industry for over 25 years and was certified by the Forestry Commission as a controlled or prescribed burner in 2001.

burn out over approximately four to five hours and did not use any chemical agents to extinguish it. Carter described the fire as extinguished when he left the property on January 12 at around 2:00 p.m.; no flames were visible and only a small amount of light, white smoke remained. Carter testified that his smoke management plan consisted of not conducting a burn if the wind carried the smoke toward the highway, which was approximately one-half mile away from the burn. Each of the three mornings, Carter lit test fires to check the wind direction before beginning the controlled burns, and each day the wind carried the smoke to the north and northwest of the highway, exactly as Carter predicted. Carter said that he conducted no prescribed burns on either the evening of January 12 or the morning of January 13, and he does not know the source of any smoke on the highway on January 13.

In granting summary judgment, the trial court found no evidence in the record specifically identifying Carter's burns or any other fire as the source for the smoke the morning of the accident. The court noted "[t]here has been no testimony, documents or other proofs offered that would tend to show either that the burn was conducted or concluded improperly, or that smoke present on highway 341 the next day was even from the same general direction as the location of Carter's prescribed burns." Additionally, the trial court concluded that Wolfe had failed to establish any gross negligence as required under OCGA § 12-6-148 to impose liability upon Carter, noting that "[h]ere, there is no such evidence of negligence, gross or otherwise."

1. Wolfe asserts that the trial court erred when it ruled that there is no link between the smoke on the highway and Carter's prescribed burn on January 12. He points to evidence that smoke, mixed with fog, was on the roadway resulting in limited visibility; that the smoke appeared to be coming from the east shoulder of the roadway; that Carter had conducted a controlled burn the day before within one-half mile of the highway; that Trooper Rozier received information regarding only one controlled burn in the area. He asserts that this circumstantial evidence was sufficient to create a jury issue as to whether Carter's controlled burn was the source of the smoke. We disagree.

As plaintiff, Wolfe had the burden of proof to establish each element of his negligence claim, including causation. *Freeman v. Eichholz*, 308 Ga. App. 18, 20 (1) (705 SE2d 919) (2011); *Hardnett v. Silvey,* 285 Ga. App. 424, 426 (646 SE2d 514) (2007). Thus,

> [t]he plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in

fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant.

(Citations and punctuation omitted.) *Grinold v. Farist,* 284 Ga. App. 120, 121-122 (1) (643 SE2d 253) (2007).

Although the evidence showed that the smoke was coming from the east side of the roadway, Wolfe has pointed us to no evidence showing the relation of the property upon which Carter conducted the controlled burn to the highway, and no evidence showing that the smoke was emanating from that property. Though a light, white smoke remained when Carter completed the burn, Carter testified that no flames remained. Wolfe presented no evidence to demonstrate that the controlled burn ever re-ignited into a fire, especially a fire sufficient to create the wall of smoke and fog Wolfe described. Nor was any evidence presented of the likelihood of such an occurrence based upon the prevailing wind and weather conditions. Although Wolfe repeatedly argues that Carter's prescribed burn is the only "identified" source of the fire, he presented no evidence of any investigation to locate the source beyond Trooper Rozier's call to the Forestry Commission and a subsequent attempt to reach Carter by phone. Although Carter's fire may have been the only sanctioned controlled burn in the area, Rozier could not identify that burn as the source of the smoke. In fact, as Rozier acknowledged, the smoke may not have been the result of a controlled burn cleared through the Forestry Commission;[4] it may have come from another source.

Even giving Wolfe the benefit of all reasonable inferences, the evidence establishes at most a "mere possibility" that Carter's controlled burn may have been the source of the smoke on January 13. The jury was left to speculate as to the source of the smoke based upon the evidence presented, and "[s]ummary judgment cannot be avoided based on speculation or conjecture." (Citation omitted.) *Cowart v. Widener,* 287 Ga. 622, 633 (3) (c) (697 SE2d 779) (2010). Accordingly, the trial court properly granted summary judgment on this ground.

2. Wolfe also asserts that the trial court erred in finding that the record contained no evidence of actionable negligence by Carter in

---

[4] To the extent that Wolfe relies upon additional affidavits regarding the source of the fire that contain inadmissible hearsay, conclusions or opinions, such evidence "is entitled to no weight in the summary judgment analysis. [Cit.]" *Whitlock v. Moore,* 312 Ga. App. 777 (1) (720 SE2d 194) (2011).

accordance with OCGA § 12-6-148. That statute provides:

> (a) Prescribed burning conducted under the requirements of this part shall:
>> (1) Be accomplished only when an individual with previous prescribed burning experience or training is in charge of the burn and is present on site until the fire is adequately confined to reasonably prevent escape of the fire from the area intended to be burned;
>> (2) Be considered in the public interest and shall not create a public or private nuisance;
>> (3) Be considered a property right of the landowner; and
>> (4) Be conducted in accordance with a permit issued under Part 3 of this article.
>
> (b) No property owner or owner's agent conducting an authorized prescribed burn under this part shall be liable for damages or injury caused by fire or resulting smoke unless it is proven that there was gross negligence in starting, controlling, or completing the burn.

OCGA § 12-6-148.

(a) Wolfe asserts that the record supports an inference that Carter did not comply with the requirement under subsection (a) (1) of the statute that a trained individual be "present on site until the fire is adequately confined to reasonably prevent escape of the fire from the area intended to be burned," because he failed to ensure that the fire was completely extinguished when he left the property at 2:00 p.m. on January 12.

But the statute does not require that a fire be completely extinguished or that no smoke be present before the supervisor may leave the site; rather, it requires only that the fire be confined to reasonably prevent its escape from the intended area. And, in fact, this Court has previously found that a landowner was entitled to the protections of OCGA § 12-6-148 where the supervising ranger left the site when "the residual smoke was light and blowing away from the highway." *Morgan v. Horton*, 308 Ga. App. 192, 194, 196 (1) (b) (707 SE2d 144) (2011). Moreover, as previously noted, the record is devoid of any evidence that the fire re-ignited after Carter left the premises, much less that any fire escaped from the intended area. Thus, no evidence exists that the fire was not reasonably confined so as to prevent its escape when Carter was away from the site. Accordingly, the evidence presents no jury issue as to Carter's compliance with OCGA § 12-6-148 (a) (1), and Wolfe was required to

prove gross negligence in order to establish Carter's liability.

(b) Even applying a gross negligence standard, however, Wolfe contends that a jury issue exists as to Carter's liability. We disagree.

"Gross negligence" is defined under OCGA § 51-1-4, as

> the absence of even slight diligence, and slight diligence is defined in the Code section as "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." In other words, gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care or lack of the diligence that even careless men are accustomed to exercise.

(Citations and punctuation omitted.) *Pottinger v. Smith*, 293 Ga. App. 626, 628 (667 SE2d 659) (2008). "Questions of negligence and diligence, even of gross negligence and slight diligence, usually are matters to be determined by the jury, but in plain and indisputable cases the court may solve the question as a matter of law." (Citation and punctuation omitted.) Id. at 629.

We find that the record in this case presents such a plain and indisputable case. Even if we were to assume, without deciding, that the evidence raised a jury issue as to whether Carter's actions were negligent, we find no evidence from which a jury could reasonably conclude that Carter failed to exercise even slight care and was therefore grossly negligent. It is undisputed that Carter conducted test burns before starting the controlled burn on January 12 to insure that the smoke would not blow across the highway. He remained on the premises until no flames were visible and only a light smoke remained. Moreover, no evidence exists that any further fire or heavy smoke resulted, which might have necessitated further action on Carter's part. "[I]t is a well settled principle of negligence law that the occurrence of an unfortunate event is not sufficient to authorize an inference of negligence." (Citation, punctuation and footnote omitted.) *Hardnett v. Silvey*, 285 Ga. App. at 426. Nor can it support an inference of gross negligence. Accordingly, the trial court properly granted summary judgment on this ground.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MARCH 16, 2012 — 

*Savage, Turner, Pinson & Karsman, Brent J. Savage, Ashleigh R. Madison*, for appellant.

*Brennan, White & Rominger, Mason White, James D. Kreyenbuhl,* for appellee.