**SECOND DIVISION
MILLER, P. J.,
BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 3, 2018**

# In the Court of Appeals of Georgia

A18A1216. PATTON v. CUMBERLAND CORPORATION.

MILLER, Presiding Judge.

Danny Patton was injured when the truck in which he was riding struck a fallen power cable in the roadway. He sued Cumberland Corporation, alleging that it had acted negligently in conducting a controlled burn on property it owned adjacent to the damaged power pole and cable. The trial court granted summary judgment to Cumberland, finding that the Prescribed Burning Act, OCGA § 12-6-148, shielded Cumberland from liability because it had not acted with gross negligence. Patton now appeals. We affirm, concluding that Cumberland was protected by the Prescribed Burn Act and that Patton failed to establish that Cumberland's employees were grossly negligent.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Amtrust North America v. Smith*, 315 Ga. App. 133 (726 SE2d 628) (2012).

So viewed, the record shows that Cumberland owns a 3,000-acre quail hunting reserve called Danville Plantation ("Danville"). In order to improve quail habitats and prevent hazards, employees at Danville conduct controlled burns each spring.

On the afternoon of April 3, 2015, three Cumberland employees with significant prior experience conducting controlled burns, Anthony Tucker, Jeff Clements, and Tanner Lemons,[1] executed a controlled burn of approximately 100 acres of Danville's property. Tucker and Clements began preparations for the controlled burn by cutting 12 to 14 foot wide firebreaks to prevent the fire from

---

[1] Tucker had over 20 years' experience conducting controlled burns at Danville. Clements had 14 years' experience, and Lemons had been involved in at least 200 controlled burns, had basic training in controlled burns, and formerly held a firefighters certification.

2

spreading. They also prepared equipment and checked the wind conditions, and Tucker secured a burn permit from the Georgia Forestry Service.

To start the controlled burn, Tucker, Clements, and Lemons set up a "back burn," in which they first burned against the wind, creating an additional firebreak, before setting another fire so that the fires would meet in the middle and extinguish each other. Once the burn was underway, the employees patrolled the area until the fires were out. The burn lasted about an hour and a half. Before leaving the area around 4 p.m., the employees made sure the firebreaks were clear, checked for hot spots, and poured water on any areas that were still burning.

Later that evening, Tucker and his nephew came across a burning area that was outside of the firebreak and near a power pole.[2] The pair spent about 15 minutes extinguishing the fire. Tucker's nephew testified, "it looked like there was a pole looked like it was on fire," but he could not say for certain and he did not know whether fire from the controlled burn had crossed the firebreak. However, the nephew also testified that the fire around the pole looked like it had come from the controlled burn area.

---

[2] In his deposition, Tucker did not mention returning to the burn area that evening. However, Lemons testified that Tucker told him a pole had caught fire and that Tucker extinguished it.

3

Early the following morning, Patton and Johnny Railey were driving in the area around the controlled burn when they encountered a wire hanging across the roadway. Railey, who was driving Patton's truck, swerved to avoid the wire, but the wire caught the rear of the truck, lifting it 18 inches or more off the ground. Railey indicated that one of the poles holding up the wire had "burned off and fell over," while the other pole was still upright.

Patton stated that the area was "like foggy, but it wasn't . . . fog. It was smoke," and that the wire was still hooked to the pole and draping across the roadway when he and Railey came upon it. He testified that he observed flames and the pole was still on fire. He also stated that he saw "straw and dead grass" in the firebreak closest to the scene of the accident, and that it appeared as though the fire had "burned across" the firebreak. Patton estimated that the firebreak was only about six feet wide, and he observed that the area between the firebreak and the road was burned "at least a half a mile" down the road. Railey, however, testified that he did not see any flames and that the pole was not on fire, but was merely smoldering. Neither Patton nor Railey could say what had caused the fire at the pole, but Patton "assumed" it was due to the same fire.

Cumberland moved for summary judgment, arguing that it was protected by the Prescribed Burn Act, and thus was not liable in the absence of gross negligence. Following a hearing, the trial court granted summary judgment to Cumberland, finding that (1) Cumberland had conducted a prescribed burn in conformance with the Act, and was therefore entitled to the Act's protections, and (2) the record provided no evidence upon which a jury could find that Cumberland's employees were grossly negligent. This appeal followed.

1. Patton argues that the trial court erred by determining that Cumberland was entitled to protections under the Prescribed Burn Act because Tucker failed to ensure that the fire was adequately confined before leaving the area. We disagree.

OCGA § 12-6-148 provides:

(a) Prescribed burning conducted under the requirements of this part shall:

(1) Be accomplished only when an individual with previous prescribed burning experience or training is in charge of the burn and is present on site until the fire is adequately confined to reasonably prevent escape of the fire from the area intended to be burned;

(2) Be considered in the public interest and shall not create a public or private nuisance;

(3) Be considered a property right of the landowner; and

(4) Be conducted in accordance with a permit issued under Part 3 of this article.

In disputing that Cumberland's controlled burn was covered by the Act, Patton challenges only the trial court's conclusion under subsection (a) (1) that Cumberland's employees were present until the fire was "adequately confined." Thus, we do not address the remaining requirements of subsection (a). See Court of Appeals Rule 25 (c) (2).

To be protected under the Act, the employee must be "present on site until the fire is adequately confined to reasonably prevent escape of the fire from the area intended to be burned[.]" OCGA § 12-6-148 (a) (1). Importantly, the Act does not require those engaging in controlled burns to entirely extinguish fires before leaving the scene; the Act is not that stringent. Instead, they are merely tasked with ensuring that the fire is "adequately confined." *Wolfe v. Carter*, 314 Ga. App. 854, 858 (2) (a) (726 SE2d 122) (2012) (the Act "does not require that a fire be completely extinguished . . . before the supervisor may leave the site; rather, it requires only that the fire be confined to reasonably prevent its escape from the intended area").

The evidence here showed that Tucker and Clements spent approximately two hours preparing the site, and that preparation included creating firebreaks that were about 14 feet wide. Tucker, Clements, and Lemons then started a "back burn," which created an additional firebreak and resulted in the fires meeting in the middle and extinguishing each other. Once the burn began, they patrolled the area until the fires were out.

The only evidence to contradict this testimony is Patton's own statement that the firebreak was about six feet wide and appeared to have been burned through. Patton, however, has offered no evidence to show that Cumberland employees were not present until the fire was "adequately confined" to reasonably prevent its escape from the area of the controlled burn.

Even viewing the evidence in the light most favorable to Patton, we cannot conclude that he presented evidence that Cumberland employees failed to ensure the fire was adequately confined before leaving the area. The record shows that Cumberland's employees refreshed the firebreaks and patrolled the area to put out any hot spots before leaving. This is sufficient to entitle Cumberland to the Act's protection. See *Wolfe*, supra, 314 Ga. App. at 858 (2) (a).

2. Patton next contends that, even if the Act applied, Cumberland remained liable because there was evidence from which a jury could have determined that its employees acted with gross negligence in failing to create firebreaks consistent with its routine practices and in leaving the area before the burn was controlled. We discern no error.

Under OCGA § 12-4-168 (b), "[n]o property owner or owner's agent conducting an authorized prescribed burn under this part shall be liable for damages or injury caused by fire or resulting smoke unless it is proven that there was gross negligence in starting, controlling, or completing the burn."

"Gross negligence" is defined as "the failure to exercise that degree of care that every man of common sense, however inattentive he may be, exercises under the same or similar circumstances; or of the diligence that even careless men are accustomed to exercise." (Citation and footnote omitted.) *Morgan v. Horton*, 308 Ga. App. 192, 197-198 (3) (707 SE2d 144) (2011). See also OCGA § 51-1-4 ("In general, slight diligence is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances. As applied to the preservation of property, the term 'slight diligence' means that care which every man of common sense, however inattentive he may be, takes of his own

8

property. The absence of such care is termed gross negligence."). "In other words, gross negligence has been defined as equivalent to the failure to exercise even a slight degree of care." (Citation and punctuation omitted.) *Heard v. City of Villa Rica*, 306 Ga. App. 291, 294 (1) (701 SE2d 915) (2010).

> Generally, when facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people as to whether or not negligence can be inferred, and, if so, whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury. In cases wherein the evidence allegedly supporting the accusations of gross negligence is plain and indisputable, however, the court may resolve the questions of whether the defendant acted with gross negligence as a matter of law.

(Citations and punctuation omitted.) *Morgan*, supra, 308 Ga. App. at 198 (3).

Here, even if the controlled burn was the source of the fire that burned the pole, that fact alone does not establish that Cumberland's employees were *grossly* negligent. See *Wolfe*, supra, 314 Ga. App. at 859 (2) (b). Rather, the evidence in the record shows that Cumberland's employees exercised at least slight diligence in handling the controlled burn: they cut firebreaks; they patrolled the area; they doused hot spots; and they returned later that evening and extinguished a nearby fire. Thus, although there is a factual dispute regarding whether the pole caught fire, the

9

undisputed evidence shows that Cumberland employees exercised at least slight diligence in conducting the controlled burn. This is sufficient to warrant summary judgment in Cumberland's favor. See *Wolfe*, supra, 314 Ga. App. at 859 (2) (b) (no gross negligence where burner conducted test burns before starting the controlled burn to ensure that the smoke would not blow across the highway, and he remained on site until no more flames were visible and only light smoke remained).

Moreover, even if we were to say that Cumberland's employees acted negligently in leaving the controlled burn before it was completely extinguished, that is not enough to raise a jury question as to whether they acted with gross negligence. To go to the jury, there must be evidence that would enable a jury to find that Cumberland's employees failed to exercise even the slightest degree of care. *Wolfe*, supra, 314 Ga. App. at 859 (2) (b); *Heard*, supra, 306 Ga. App. at 294 (1). Patton, however, has not put forth any such evidence. He did not proffer any evidence showing that there was any investigation into the source of the fire, nor did he provide any expert testimony establishing that the pole fire was the result of the controlled burn.[3] Cf. *Wolfe*, supra, 314 Ga. App. at 857 (1) ("Although Wolfe

---

[3] Although we note the absence of expert testimony in this case, we do not hold that expert testimony is always required.

10

repeatedly argues that [the] prescribed burn is the only "identified" source of the fire, he presented no evidence of any investigation to locate the source . . . could not identify that burn as the source of the smoke" and therefore summary judgment was proper.)

Patton contends that Cumberland's employees were grossly negligent because he observed the firebreak to be six feet wide, whereas Cumberland's policy was that the firebreaks be twelve to fourteen feet wide. However, a violation of that practice is not necessarily negligent, much less grossly negligent. See *Youngblood v. All American Quality Foods*, 338 Ga. App. 817, 821-822 (792 SE2d 417) (2016) (physical precedent only) ("Although a company's private policy may be admissible for the purpose of illustrating negligence (or lack thereof) under circumstances to which the policy would be applicable, the policy does not establish the governing standard of care."). Here, there was no evidence as to the proper width of a firebreak, and thus Patton has not raised a question of fact with regard to Cumberland's alleged failure to adhere to its policy.

Patton also argues that Cumberland's employees were grossly negligent in leaving the site before the controlled burn was extinguished and allowing the fire to escape the burn area. As noted above, however, the Act does not require the burn to

11

be extinguished, and thus Cumberland's failure to extinguish the burn in this case does not rise to the level of gross negligence. Essentially, Patton seeks to create liability based on the failure to remain on site to monitor the controlled burn until it was completely extinguished. This is not what the statute requires. Thus, contrary to Patton's contention, the evidence here is "plain and indisputable." *Morgan*, supra, 308 Ga. App. at 198 (3). Even viewing the evidence in the light most favorable to Patton, there is no evidence from which a jury could determine that Cumberland employees failed to exercise at least slight diligence. Accordingly, Cumberland was entitled to summary judgment, and we affirm the trial court's order.

*Judgment affirmed. Brown and Goss, JJ., concur*.