A08A1461. POTTINGER v. SMITH.
(667 SE2d 659)

ANDREWS, Judge.

Marshall Lee Smith brought a medical malpractice action against Jill Pottinger, M.D., an emergency room physician, seeking to recover damages arising out of emergency medical care provided to him in April 2005 for a leg fracture incurred in a motorcycle accident. Pottinger moved for summary judgment asserting that she could not be held liable because there was no clear and convincing evidence that her actions in providing emergency medical care to Smith showed gross negligence, as provided by OCGA § 51-1-29.5.[1] Pottinger appeals from the trial court's order denying the motion, and for the following reasons we reverse.

Smith was injured in a motorcycle accident and was immediately taken by ambulance to the Floyd Medical Center emergency room at about 10:00 p.m. on April 19, 2005, where he was treated by Pottinger for various injuries, including an injury to his left leg. Pottinger's expert affidavit in support of her motion for summary judgment states that she ordered various tests for internal injury, including a cranial CT scan, spinal x-rays, and x-rays of the tibia and fibula in Smith's left leg. The x-rays were read on April 19 by Joseph

---

[21] *Betallic, Inc. v. Deavours*, 263 Ga. 796, 797 (439 SE2d 643) (1994).
[1] This Code section, enacted in 2005 as part of tort reform legislation, applies to causes of action arising on or after February 16, 2005. Ga. L. 2005, p. 1, § 15 (b).

Burch, M.D., a radiologist, who found "a minimally displaced fracture of the left fibular head" and "no other fracture or subluxation." Pottinger relied on the radiologist's findings with respect to the x-rays. According to Pottinger, because the fracture found by the radiologist was not to a weight-bearing bone, no consult with an orthopedic surgeon was required in the emergency room, and she did not request one. Because of possible head and spinal injuries, Pottinger called a neurosurgeon, Mark Murphy, M.D., to examine Smith. At 1:00 a.m. on April 20, Murphy arrived at the emergency room, took over as Smith's treating physician, and admitted him to the hospital for neurological observation. Pottinger did not treat Smith after he was admitted to the hospital. Smith remained in the hospital until he was discharged on April 23. During that time, no orthopedic consultation was ordered for Smith's leg fracture, and Smith was ordered to "bear weight [on his injured leg] as tolerated." Smith gave deposition testimony that, after he was discharged from the hospital with a rolling walker, he continued to experience severe pain in his left leg. On May 12, 2005, Smith saw an orthopedic surgeon, who examined the x-rays taken at the emergency room on April 19. According to the physician's expert affidavit filed with Smith's complaint,[2] medical records showed that the orthopedic surgeon examined the April 19 x-rays taken during Smith's emergency room treatment and found not only the fibular fracture previously found by the radiologist, but an additional serious fracture that required surgery to correct.

Smith brought this medical malpractice action against the emergency room physician, Pottinger; the radiologist, Burch; the neurosurgeon, Murphy, and Floyd Medical Center. The affidavit of Smith's physician expert stated that (based on review of the certified medical records) all three physicians acted below the standard of care. As to Pottinger, the expert stated that her actions were below the standard of care because she misread the x-rays and failed to order a consult with an orthopedic surgeon. The expert characterized Pottinger's breach of the standard of care as grossly negligent. Based on this record, Pottinger moved for summary judgment under OCGA § 51-1-29.5 and stated in her supporting affidavit that she sought no orthopedic consult because she relied on the radiologist's findings that the x-rays showed there was no serious fracture that would have required an emergency room consultation with an orthopedic surgeon.

---

[2] The affidavit attached to the complaint pursuant to OCGA § 9-11-9.1 was based on a review of certified medical records which were identified in the appellate record. See *Rudd v. Paden*, 279 Ga. App. 141, 142-143 (630 SE2d 648) (2006).

Smith does not dispute that OCGA § 51-1-29.5 applies to his claim against the emergency room physician, Pottinger, and that Pottinger provided him "emergency medical care" as defined in OCGA § 51-1-29.5 (a) (5). Subsection (c) of OCGA § 51-1-29.5 provides:

> In an action involving a health care liability claim arising out of the provision of emergency medical care in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department, no physician or health care provider shall be held liable unless it is proven by clear and convincing evidence that the physician or health care provider's actions showed gross negligence.

It follows that, in order to impose liability on Pottinger for the emergency medical care at issue, Smith was required to prove by clear and convincing evidence that Pottinger's actions in providing such care showed gross negligence. Under OCGA § 51-1-4, gross negligence is the absence of even slight diligence, and slight diligence is defined in the Code section as "that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances." In other words, gross negligence has been defined as "equivalent to [the] failure to exercise even a slight degree of care" (citation and punctuation omitted) (*Southern Bell Tel. &c. Co. v. C & S Realty Co.*, 141 Ga. App. 216, 219 (233 SE2d 9) (1977), overruled in part on other grounds, *Ga.-Carolina Brick & Tile Co. v. Brown*, 153 Ga. App. 747, 752 (266 SE2d 531) (1980)), or "lack of the diligence that even careless men are accustomed to exercise." *Levine v. Keene*, 178 Ga. App. 832 (344 SE2d 684) (1986). Moreover, proof of gross negligence by "clear and convincing evidence," as required by OCGA § 51-1-29.5 (c), "is a more stringent standard than 'preponderating' and requires a greater quantum and a high quality of proof in plaintiff's favor." (Citation and punctuation omitted.) *In re Estate of Burton*, 265 Ga. 122, 123 (453 SE2d 16) (1995).

In support of his contention that the record contains clear and convincing evidence proving that Pottinger's actions were grossly negligent, Smith points to medical records showing that Pottinger failed to recognize a serious leg fracture shown by the x-rays, and that Pottinger failed to call an orthopedic surgeon to the emergency room to consult about his leg injury. Smith also points to the physician's opinion in his OCGA § 9-11-9.1 expert affidavit that these failures were below the standard of care and were grossly

negligent.[3] Pottinger, however, points to evidence that she immediately ordered x-rays on Smith's injured leg; that the x-rays were read by a radiologist; that she relied on the radiologist's finding that the x-rays did not show a serious fracture, and that, based on this finding, there was no need for an orthopedic surgeon to consult in the emergency room about Smith's leg injury. In Pottinger's opinion, her actions met or exceeded the standard of care.

"[Q]uestions of negligence and diligence, even of gross negligence and slight diligence, usually are matters to be determined by the jury[, but] in plain and indisputable cases . . . the court may solve the question as a matter of law." (Citation and punctuation omitted.) *Lewis v. Wilson*, 111 Ga. App. 666, 670 (142 SE2d 852) (1965). On the present record, this is such a plain and indisputable case. Even assuming there was evidence sufficient to create a jury issue as to whether Pottinger's actions were negligent, there is no evidence, and certainly no clear and convincing evidence, by which a jury could reasonably conclude that Pottinger failed to exercise even slight care and was therefore grossly negligent. Under OCGA § 51-1-29.5, Pottinger was entitled to summary judgment.[4] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

*Judgment reversed. Ruffin, P. J., and Bernes, J., concur.*

DECIDED SEPTEMBER 4, 2008 — RECONSIDERATION DENIED SEPTEMBER 22, 2008 — 

*Minor, Bell & Neal, William F. Jourdain, Jonathan Bledsoe*, for appellant.

*Freedman & Sinowski, Thomas C. Sinowski, Miguel A. Garcia, Jr.*, for appellee.

---

[3] A mere conclusory expert opinion with respect to the existence of gross negligence does not create a jury issue; rather, there must be facts sufficient for a jury to find gross negligence. See *Loving v. Nash*, 182 Ga. App. 253, 255 (355 SE2d 448) (1987).

[4] Floyd Medical Center was also entitled to summary judgment to the extent Smith's suit alleges that it was liable under the principle of respondeat superior for the actions of Pottinger.