**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A0942. SOUTHWESTERN EMERGENCY PHYSICIANS, P.C. et al. v. NGUYEN et al.

BRANCH, Judge.

After six-month-old Keira Pech's treatment in July 2007 at the emergency room of Phoebe Putney Memorial Hospital, Keira's parents, Thu Carey Nguyen and Khoeun Pech, brought this negligence action against the hospital, the emergency room physician, the physician's assistant Michael J. Heyer, and Southwestern Emergency Physicians, P.C. (collectively, "defendants"). Plaintiffs moved for partial summary judgment, arguing that because defendants did not supply "emergency medical care" as defined in OCGA § 51-1-29.5 (c) as a matter of law, they would be liable for any ordinary negligence in the case. The trial court granted the motion. We

granted defendants' application for interlocutory review of this ruling,[1] and we now reverse.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003) (citations and punctuation omitted). A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. *Ethridge v. Davis*, 243 Ga. App. 11, 12 (530 SE2d 477) (2000).

Although we would view the record in favor of defendants as the nonmovants, the relevant facts are not in dispute. On the afternoon of July 7, 2007, while in the care of a babysitter, six-month-old Keira fell off a bed and hit her head on a suitcase. Because Keira's mother was alarmed by an apple-sized, red-purple lump on the right side of the baby's head, the mother took Keira to the Putney Memorial emergency

---

[1] We note that the order granting a motion for partial summary judgment is subject to direct appeal. See OCGA § 5-6-34 (a) (1) (granting appeals from any "final judgment"); *Whisenhunt v. Allen Parker Co.*, 119 Ga. App. 813 (168 SE2d 827) (1969) (appeal may be had from a grant of summary judgment on any issue or as to any party); see also *Spivey v. Hembree*, 268 Ga. App. 485, 486, n.1 (602 SE2d 246) (2004) ("[t]his Court will grant a timely application for interlocutory appeal if the order complained of is subject to direct appeal and the applicants have not otherwise filed a timely notice of appeal").

room. At or soon after 5:50 p.m., a paramedic employed by the hospital noted a hematoma on Keira's head. At 6:02 p.m., Heyer, the physician's assistant, diagnosed a "minor injury" consisting of a "scalp contusion," and did not call in the attending emergency room doctor or order radiology studies. Keira was discharged from the emergency room at 6:10 p.m. Three days later, Keira developed respiratory distress and was readmitted to the same hospital. A CT scan showed that a "very large subdural hematoma" was putting substantial pressure on Keira's brain. Keira eventually suffered severe and permanent neurological injuries.[2]

Plaintiffs moved for partial summary judgment on the ground that because none of the emergency providers who saw Keira on July 7 believed that her symptoms presented a medical emergency, she did not receive "emergency medical care" as defined in OCGA § 51-1-29.5 (a), with the result that defendants can be held liable for ordinary negligence in the case. The trial court granted partial summary judgment to plaintiffs on this ground.

1. Defendants' principal argument on appeal is that the trial court erred in granting plaintiffs partial summary judgment because a question of fact remains as

---

[2] At the age of three, for example, Keira had numerous seizures each day and could not walk or talk.

to whether Keira was provided "emergency medical care" such that defendants may claim the protections of the the "gross negligence" standard set out in OCGA § 51-1-29.5 (c). We agree.

OCGA § 51-1-29.5 (a) (5) defines "emergency medical care" as

*bona fide emergency services* provided *after the onset of a medical or traumatic condition manifesting itself by acute symptoms* of sufficient severity, including severe pain, *such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy*, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. The term does not include medical care or treatment that occurs after the patient is stabilized and is capable of receiving medical treatment as a nonemergency patient or care that is unrelated to the original medical emergency.

(Emphasis supplied.) Subsections (c) and (d) of the same statute provide in relevant part:

(c) In an action involving a health care liability claim arising out of the provision of emergency medical care in a hospital emergency department . . . , *no physician or health care provider shall be held liable unless it is proven by clear and convincing evidence that the physician or health care provider's actions showed gross negligence.*

4

(d) In an action involving a health liability claim arising out of the provision of emergency medical care in a hospital emergency department . . . , *the court shall instruct the jury to consider*, together with all other relevant matters: (1) [w]hether the person providing care did or did not have the patient's medical history or was able or unable to obtain a full medical history, including the knowledge of preexisting medical conditions, allergies, and medications; (2) [t]he presence or lack of a preexisting physician-patient relationship or health care provider-patient relationship; (3) *[t]he circumstances constituting the emergency*; and (4) *[t]he circumstances surrounding the delivery of the emergency medical care*.

(Emphasis supplied.) As we have previously held, there are thus "three conditions which must be present" in order to OCGA § 51-1-29.5 to apply:

(a) the lawsuit must involve a "health care liability claim"; (b) the claim must arise out of the provision of "emergency medical care"; and the (c) care must have been provided to the patient "in a hospital emergency department or obstetrical unit or in a surgical suite immediately following the evaluation or treatment of a patient in a hospital emergency department."

*Nisbet v. Davis*, 327 Ga. App. 559, 564-565 (1) (760 SE2d 179) (2014), quoting OCGA § 51-1-29.5 (c). If the statute applies under these criteria, then a jury would be required to consider whether "the circumstances constituting the emergency" as

5

well as those "surrounding the delivery of the emergency medical care" show "by clear and convincing evidence" that the provider's actions "showed gross negligence." OCGA § 51-1-29.5 (a) (5), (c), (d).

It is undisputed that plaintiffs' complaint raises a "health care liability claim" and that Keira received treatment in "a hospital emergency department." OCGA § 51-1-29.5 (c). Plaintiffs argue, however, that because Keira was never diagnosed as having a serious condition or injury, she was never provided with "emergency medical care." We disagree.

OCGA § 51-1-29.5 (d) requires a trial court to instruct a jury faced with an emergency room diagnosis or misdiagnosis to consider both "[t]he circumstances constituting the emergency" and "[t]he circumstances surrounding the delivery of the emergency medical care." Subsection (a) (5) of the statute defines "emergency medical care" as

> *bona fide emergency services* provided after the onset of a medical or traumatic condition manifesting itself by acute symptoms of sufficient severity . . . such that the absence of immediate medical attention could reasonably be expected to result in placing the patient's health in serious jeopardy.

(Emphasis supplied.) Our Supreme Court has noted that although "the legislature chose not to define 'bona fide' within OCGA § 51-1-29.5," it is "a phrase of general usage and must be given its ordinary meaning," which might include actions taken "'in good faith' or "'genuine' and 'true.'" *Abdel-Samed v. Dailey*, 294 Ga. 758, 763 (2) (755 SE2d 805) (2014) (citations omitted). In that case, the Court found "'bona fide emergency services' to mean genuine or actual emergency services," id. at 764 (2), and held that emergency room personnel provided such services to the patient when they examined and diagnosed him. Similarly, in the case before us, the physician's assistant examined and diagnosed Keira in an emergency room, even if his diagnosis of a mere "contusion" was eventually proved incorrect.

This Court has repeatedly held, moreover, that "the issue of whether a claim [for negligence] involves the provision of emergency medical care may be a question of fact for the jury." *Howland v. Wadsworth*, 324 Ga. App. 175, 179 (1) (749 SE2d 762) (2013), citing *Bonds v. Nesbitt*, 322 Ga. App. 852, 855 (1) (747 SE2d 40) (2013). In *Howland*, for example, a patient who went to an emergency department after several weeks of pain in her feet was classified on admittance by a physician's assistant as "non-urgent" and "relatively stable." 324 Ga. App. at 178. The patient was diagnosed with cellulitis, a condition typically treated with antibiotics, and

7

discharged, but was found unresponsive the following day. Id. She was eventually diagnosed with arterial blockages that resulted in the below-the-knee amputations of both legs. Id. On appeal from a trial court's entry of judgment on the jury's verdict that defendants were liable for ordinary negligence, this Court rejected plaintiff's argument that the jury should not have considered the "gross negligence" and "clear and convincing" standards of OCGA § 51-1-29.5 (c) because, as a matter of law, the patient did not receive "emergency medical care" as defined in subsection (a) (5) of the same statute. We concluded that under the facts of the case, including a health care provider who did not realize the seriousness of the patient's condition, the health care provider's claim that the "gross negligence" standard applied was one that "must be made to and the decision rendered by the jury." Id. at 181 (2), n. 3, 4. We noted that an emergency room health care provider may claim the benefit of the statute's "gross negligence" standard "when he or she mistakenly concludes that a patient . . . [is] 'capable of receiving medical treatment as a nonemergency patient.'" Id. at 181 (2), quoting OCGA § 51-1-29.5 (a) (5).

Here, nothing in the record before us suggests that the physician's assistant who evaluated Keira in the emergency room was not acting in good faith when he diagnosed her as suffering from a mere "contusion." See *Abdel-Sahmed*, 294 Ga. at

8

764 (2) (rejecting plaintiffs' contention that defendants were not providing "bona fide emergency services" when they treated plaintiff in good faith). The circumstances of Keira's admission, readmission, and permanent injuries also require a jury to consider whether, when Keira presented at the emergency room with a large red-purple lump on her head, she was suffering from an actual emergency – that is, whether she presented a "medical or traumatic condition manifesting itself by acute symptoms of sufficient severity" such that "the absence of immediate medical attention could reasonably be expected" to place her health "in serious jeopardy." OCGA § 51-1-29.5 (a) (5). Accordingly, the trial court erred when it concluded that subsection (c)'s "gross negligence" standard of care, as well as plaintiffs' "clear and convincing" evidentiary burden, was inapplicable to this case as a matter of law. *Howland*, 324 Ga. App. at 180-181 (1), (2) (a jury properly determined whether plaintiff's claim "arose out of the provision of emergency medical care" under OCGA § 51-1-29.5 (a) (5) even when the patient was originally classified as "non-urgent" and ); *Bonds*, 322 Ga. App. at 855-856 (1) (the question whether a physician or health care provider was entitled to claim the protections of OCGA § 51-1-29.5 (c)'s "gross negligence" standard was for the jury even when some evidence showed that patient had

"stabilized and was capable of receiving medical treatment as a nonemergency patient" within the meaning of OCGA § 51-1-29.5 (a) (5)).

2. Defendants also argue that this record establishes that they supplied "emergency medical care" such that the gross negligence standard of OCGA § 51-1-29.5 (c) should apply as a matter of law. See, e.g., *Quinney v. Phoebe Putney Mem. Hosp.*, 325 Ga. App. 112, 116 (1) (751 SE2d 874) (2013) (gross negligence standard applied as a matter of law when plaintiffs had failed to show that a patient "was ever capable of receiving medical treatment as a nonemergency patient," but had instead shown "that emergency medical services were necessary because his health was in serious jeopardy"). Defendants did not move for summary judgment on this question below, however, with the result that we do not reach it. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("Fairness to the trial court and to the parties demands that legal issues be asserted in the trial court.") (footnote omitted).

For the reasons stated above, we reverse the trial court's partial grant of summary judgment to plaintiffs.

*Judgment reversed. Barnes, P. J., and Boggs, J., concur.*