**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

***DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.***

**July 2, 2021**

# In the Court of Appeals of Georgia

A21A0626. METROPOLITAN ATLANTA RAPID TRANSIT AUTHORITY v. TYLER.

PIPKIN, Judge.

Appellee Rachel Tyler, administrator of the estate of Jaccolah Johnson, filed a negligence suit against Metropolitan Atlanta Rapid Transit Authority ("MARTA") and driver, Tylica Taylor,[1] for injuries Johnson sustained when she fell descending the steps of a MARTA paratransit bus. Following a trial, the jury returned a verdict for the plaintiff. Appellant MARTA appeals, asserting that the trial court erred in instructing the jury on spoliation of evidence. We agree that the trial court erred in instructing the jury on spoliation of evidence and for the reasons more particularly

---

[1] The claims against Taylor were dismissed prior to trial.

explained below, reverse the judgment, vacate the attorney fee award under OCGA § 9-11-68, and remand for a new trial.[2]

Construed in favor of the verdict[3], the evidence shows that on January 24, 2016, Johnson, a 66 year old woman, fell while descending the steps of a MARTA mobility bus. MARTA requires that paratransit passengers submit a physician's certification in order to qualify for service – a requirement that Johnson met. Johnson's fall was captured by the video surveillance system on the MARTA bus, and this video was central to Appellee's case. The video depicts Johnson carrying a number of personal items as she approached the angled steps leading out of the bus, and then shows her sudden fall, which appears to be the result of a misstep, causing Johnson to spin, fall backwards out of the bus, and strike her head on a curb. Johnson

---

[2] MARTA's remaining claims are fact dependent and may not arise following a new trial; accordingly we need not address them.

[3] "There is a presumption in favor of the validity of verdicts. And after rendition of a verdict, all the evidence and every presumption and inference arising therefrom, must be construed most favorably towards upholding the verdict." (Citation omitted.) *Esprit Log & Timber Frame Homes, Inc. v. Wilcox*, 302 Ga. App. 550, 550 (691 SE2d 344) (2010).

was initially responsive and conscious at the scene, but later that day suffered a serious brain bleed that required surgery and left her in a vegetative state.[4]

During the trial, Appellee questioned multiple MARTA employees about the fact that some witnesses viewed surveillance video of Johnson boarding the bus prior to her fall; this video was not provided to Appellee or tendered as evidence.[5] Appellee did not file a motion for sanctions or otherwise seek a ruling on this issue prior to trial. Instead, Appellee requested during the charge conference an instruction on the spoliation of evidence concerning the missing surveillance video. The trial court agreed and, over MARTA's objection, the jury was instructed as follows: [w]hen a party has evidence that rejects or disproves a claim or charge made against the party, if he or she fails to produce it or having more certain and satisfactory evidence relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim is well founded. This presumption may be rebutted, however. The surveillance video presented captures Johnson's tragic fall and the minutes leading

[4] Unfortunately, Johnson died shortly after trial. By consent of the parties, Rachel Tyler, as administrator of the estate of Jaccolah Johnson was in place of Rachel Tyler, as guardian and conservator of Jaccolah Johnson.

[5] In fact, the first mention of the missing footage came during Appellee's first witness – a MARTA representative called for purposes of cross examination."

up to it. On November 8, 2018 the case concluded when the jury awarded Johnson

$25,000,000 and attributed 75 percent of the responsibility to MARTA and 25

percent responsibility to Johnson.

MARTA now appeals, arguing on appeal – as it did below – that the spoliation

instruction was erroneous. We agree.

"Spoliation refers to the destruction or failure to preserve evidence that is

necessary to contemplated or pending litigation." (Citation omitted.) *AMLI*

*Residential Properties. v. Ga. Power Co.,* 293 Ga. App. 358, 361 (1) (667 SE2d 150)

(2008). Among the possible sanctions for spoliation is a jury instruction that allows

an adverse inference that the lost or destroyed evidence would have been harmful to

the party in control of the evidence.[6] *Anthem Cos. v. Wills*, 305 Ga. 313, 316 (2) (823

---

[6] OCGA § 24-14-22 provides:

If a party has evidence in such party's power and within such party's reach by which he or she may repel a claim or charge against him or her but omits to produce it or if such party has more certain and satisfactory evidence in his or her power but relies on that which is of a weaker and inferior nature, a presumption arises that the charge or claim against such party is well founded; but this presumption may be rebutted.

4

SE2d 781) (2019). Our appellate courts have cautioned that this jury instruction is a "severe sanction," *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 343 (2) (812 SE2d 256) (2018), to be generally reserved for intentional destruction of material evidence. Id. at 343 (2) (d); *Creek House Seafood & Grill, LLC v. Provatas*, 358 Ga. App. 727, 731 (2) ( 856 SE2d 335) (2021) (recognizing that the adverse inference jury charge should be reserved for "exceptional cases"). Trial courts have broad discretion to impose spoliation sanctions, and we will not disturb a trial court's judgment absent an abuse of discretion. *Phillips v. Harmon*, 297 Ga. 386, 397 (II) (774 SE2d 596) (2015).

Appellee did not file a motion for sanctions and argues that the jury charge was not a spoliation sanction but rather an appropriate jury instruction tailored to the evidence, as there was testimony before the jury regarding the existence of video that captured Johnson boarding the bus that was not produced.[7] While a trial court must

---

[7] This argument, were it to be accepted, would impermissibly circumvent the established procedures to address the suspected spoliation of evidence, which procedures include a thorough evaluation of the evidence by the trial court. See OCGA § 24-14-22; *Phillips*, 297 Ga. at 396-397 (II); *Creek House Seafood & Grill*, 358 Ga. App. at 730 (2).

instruct the jury on every material issue presented by the evidence, *Almassud v. Mezquital*, 345 Ga. App. 456, 458 (1) (811 SE2d 110) (2018), "spoliation of evidence is not a fact the jury is empowered to find by inference. Instead, whether spoliation occurred is a question of fact, to be decided by the court prior to trial." (Citation and punctuation omitted.) *Hillman v. Aldi, Inc.*, 349 Ga. App. 432, 443-444 (3) (825 SE2d 870) (2019) (recognizing that the party suspecting spoliation was required to obtain a ruling from trial court prior to making spoliation argument to jury).

Prior to charging the jury on spoliation, the trial court must determine "whether spoliation occurred, whether the spoliator acted in bad faith, the importance of the compromised evidence, and so on." *Demere Marsh Assoc., LLC v. Boatright Roofing & Gen. Contracting, Inc.*, 343 Ga. App. 235, 248 (4) (808 SE2d 1) (2017). Once a trial court has determined that spoliation has occurred, the court should weigh the following five factors when deciding the appropriate penalty:

> (1) whether the party seeking sanctions was prejudiced as a result of the destroyed evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the destroying party acted in good or bad faith; and (5) the potential for abuse if any expert testimony about the destroyed evidence was not excluded.

6

(Citation and punctuation omitted.) *Creek House Seafood & Grill*, 358 Ga. App. at 730 (2).

There was no evidentiary hearing regarding the video that MARTA failed to produce. Rather Appellee questioned certain witnesses about the existence of video footage capturing Johnson boarding the bus. A MARTA superintendent testified before the jury that he watched a video of the incident that was provided by MARTA's safety officer that captured the entirety of her ride and that he returned the video to the safety officer that produced it. This witness was unable to offer any explanation as to why the footage capturing the earlier portion of Johnson's ride was not preserved or when it was destroyed. Corporate Representative Steve Perry was questioned about destruction of the video and he indicated that MARTA's system preserves videos for 30 days; the record appears to be silent as to when these witnesses watched the complete video and when MARTA became aware of the litigation or when litigation became reasonably foreseeable, which would have triggered their duty to preserve the evidence. See *Phillips*, 297 Ga. at 397 n. 9 (II) (clarifying that injury and internal investigation *alone* do not necessarily trigger a duty to preserve evidence). During the charge conference the trial court stated that "there was at one time a complete video. And there was half a video, and there was

7

a lot of testimony about it. . . . I think it's the chronology. And it's in front of the jury, and it is just kind of hanging out there." The court also noted that the incident garnered enough attention for a MARTA supervisor to review the video, as proof that litigation was known or contemplated. But as the Supreme Court recognized in *Phillips v. Harmon*, "there may be many reasons to investigate incidents causing injuries, from simple curiosity to quality assurance to preparation for possible litigation."[8] 297 Ga. at 397 n. 9 (II). And because Johnson was responsive and conscious at the scene, there is no indication, based on this record, when MARTA learned of the severity of her injuries. The trial court did not make any express factual findings that spoliation occurred, and we fail to see where this particular record supports such a conclusion.[9]

---

[8] The Supreme Court explained that there are a number of factors that can make litigation reasonably foreseeable to a defendant, "such as the type and extent of the injury; the extent to which fault for the injury is clear; the potential financial exposure if faced with a finding of liability; the relationship and course of conduct between the parties, including past litigation or threatened litigation; and the frequency with which litigation occurs in similar circumstances." 303 Ga. at 340-341 (2). The record here appears to be silent as to these considerations.

[9] Compare *Lee v. CNH America, LLC*, 322 Ga. App. 766, 774 (3) (746 SE2d 243) (2013) (This Court noted that the charge conference was not transcribed and that it was unable to discern the trial court's findings, if any. Nonetheless, the Court affirmed charging the jury on spoliation where it was clear from the record that evidence existed and litigation was contemplated at the time Appellee's request for

"In order for a trial court's jury instruction to constitute reversible error, the party challenging the instruction must establish that the instruction was both legally erroneous and harmful." *Howland v Wadsworth*, 324 Ga. App. 175, 183 (4) (749 SE2d 762) (2013). Appellee, citing *Seaboard Coast Line Railroad Co. v. Harris,* 124 Ga. App. 126, 131 (5) (182 SE2d 915) (1971),[10] argues that any error in giving the adverse inference charge was harmless because it was not specifically directed at either party. Here, the charge was not an "abstract proposition" and we cannot reasonably say that any rational juror would believe the inference applied equally to both parties when there was no suggestion that Appellee destroyed evidence. MARTA's defense was, in large part, that Johnson was a paratransit passenger due to endurance issues and did not have difficulties with stability or mobility; thus neither MARTA nor the driver were put on notice that Johnson needed assistance.

inspection was denied.)

[10] The *Seaboard* Court acknowledged existing precedent that the adverse inference charge should only be given in exceptional circumstances, see *Cotton States Fertilizer Co. v. Childs*, 179 Ga. 23 (174 SE 708) (1934), but nevertheless concluded that a new trial was not warranted. The second case cited by Appellee, *Delk v. Sellers*, 149 Ga. App. 439, 443 (6) (254 SE2d 446) (1979), cites only to *Seaboard* and contains no analysis of the facts as it relates to this proposition.

9

The entire fall was captured on video, which was repeatedly played during the trial. Whether the portion of the video that was not produced at trial would have shown Johnson boarding without assistance – in a manner that was favorable to MARTA – or would have shown Johnson visibly struggling to climb the stairs – supporting Appellee's argument that Johnson needed assistance – or would have had little probative value is a complete mystery. "The fact that lost evidence is often equally or even more important to the case of the party that controlled it is why factfinders should not readily presume that lost evidence was favorable to the opposing party absent a showing that the evidence was lost intentionally to deprive the other party of its use in litigation." *Cooper Tire*, 303 Ga. at 346-347 (3). Yet, Appellee's counsel argued in closing that MARTA destroyed video evidence, further drawing attention to the spoliation charge.

"A charge unauthorized by the evidence, which injects into the case issues not made by the pleadings or evidence, is presumed to be harmful to the losing party, and such a charge is grounds for new trial unless it is apparent that the jury could not have been misled by it." (Citation and punctuation omitted.) *Boston Men's Health Ctr., Inc. v. Howard*, 311 Ga. App. 217, 222 (1) (715 SE2d 704) (2011). Because there is insufficient evidence in the record to support a finding of spoliation, and the

10

erroneous jury instruction likely prejudiced MARTA's case, we agree that the trial court committed reversible error and remand the case for a new trial. *American Multi-Cinema, Inc. v. Walker*, 270 Ga. App. 314, 314 (605 SE2d 850) (2004) (case remanded for new trial based on errors in jury charge); see also *Taylor v. Haygood*, 113 Ga. App. 30, 31-33 (2) (147 SE2d 48) (1966).

2. Because an award under OCGA § 9-11-68 (b) (2) is contingent upon the final judgment of the case, we vacate the trial court's award of attorney fees and expenses of litigation. See *Internal Med. All., LLC v. Budell*, 290 Ga. App. 231, 240 (6) (659 SE2d 668) (2008) (attorney fee award contingent upon successful claims vacated with grant of new trial).

*Judgment reversed in part, vacated in part, and case remanded. Hodges, J., concurs. Miller, P. J., concurs fully and specially*.

A21A0626. METROPOLITAN ATLANTA RAPID TRANSIT
    AUTHORITY v. TYLER.

MILLER, Presiding Judge, concurring fully and specially.

It is very unfortunate that the verdict has to be reversed in this case. I agree with the majority, but I write separately to express my concern that the issue of spoliation, including the propriety of the adverse-inference jury instruction, was not litigated more fully before the trial court and prior to the charge conference given the importance of the videotape evidence to this case.

As the majority notes, the adverse-inference jury instruction at issue in this case is one of the most severe sanctions a trial court can impose, and it must be reserved for "exceptional cases" of spoliation, such as where the party intentionally and in bad

faith destroyed evidence and thereby caused incurable prejudice to the opposing party. See, e.g., *Cooper Tire & Rubber Co. v. Koch*, 303 Ga. 336, 343 (3) (812 SE2d 256) (2018). The majority notes that the issue of the missing video footage was first raised before the trial court mid-trial, during the plaintiff's cross-examination of a MARTA employee. The record reveals, however, that the plaintiff deposed the same witness in pre-trial discovery, and he not only stated that he had reviewed a video of the decedent boarding the bus but also answered multiple questions regarding whether the video showed that the decedent struggled to climb the steps when boarding. Thus, the parties clearly knew, well before trial, that this footage had existed at some point. And based on her questioning of the witness at trial, it seems equally clear the plaintiff knew, prior to trial, that MARTA had not preserved this portion of the surveillance video. Nonetheless, the plaintiff did not file a pre-trial motion seeking a sanction for MARTA's failure to preserve this video. Instead, she raised the issue only in her request to charge, when she asked the trial court to charge the jury with Patten Instruction 02.160. During the charge conference, MARTA argued both

that the plaintiff should have filed a separate motion asking for this sanction and that

2

the sanction was not warranted in this case, but the parties' discussion of the propriety of this crucial instruction was quite brief, and the trial court's analysis of the issue was understandably limited. In the future, I strongly encourage parties to treat significant issues such as spoliation with more care and to highlight any associated request for sanctions to ensure the issue receives the attention and analysis it deserves, to help avoid creating a situation where we are constrained to reverse a verdict after a lengthy jury trial.